EDWARD E. BENNETT, APPELLEE, V. TRAVELERS PROTECTIVE ASSOCIATION OF AMERICA, APPELLANT.

FILED MARCH 31, 1932.   No. 28237.

*Hall, Cline & Williams,* for appellant.

*J. W. Kinsinger, H. C. Henderson* and *Lincoln Frost, Jr., contra.*

Heard before GOSS, C. J., DEAN, GOOD, DAY and PAINE, JJ., and LANDIS, District Judge.

PAINE, J.

This is a suit brought on an accident insurance contract issued by the Travelers Protective Association of America, a fraternal benefit society, commonly known as the T. P. A., with headquarters at St. Louis, Missouri. The appellee recovered a verdict of $2,687.12 for the loss of his left eye through accidental means. The motion for a new trial was overruled, and an attorney's fee of $270 was taxed as part of the costs.

The evidence discloses that on May 23, 1930, appellee employed a carpenter to raise, remove, repair, and replace a set of five steps, weighing probably 400 pounds, in front of his residence at 1524 Washington street, Lincoln, and, in assisting the carpenter to lift up this heavy flight of five steps, and endeavoring to reach a 2 by 4 to place under them as a brace, Mr. Bennett strained himself quite severely. He does not recall whether he read the evening paper that night or not, but in the morning he found the sight in his left eye blurred, and, upon examination by an oculist, he was told to go home and go to bed for three weeks. His difficulty was diagnosed as a detachment of the retina, which caused the entire loss of the sight in his eye, and three months later he was compelled to have the eye removed. The certificate of insurance in the appellant organization provided for a payment of $2,500 for the loss of one eye by accident. The judgment is attacked on the ground that under these facts such eye was not destroyed by "accidental means," as the decisions exclude results which follow acts intentionally

done. *Caldwell v. Travelers Ins. Co.,* 305 Mo. 619, 39 A. L. R. 56.

The appellee testified that, at one particular time, when the old steps were tilted up on edge at a 45-degree angle, and as he was reaching for the brace, he made a superhuman effort to keep the steps from slipping, and that that was the time the strain occurred, and the medical testimony indicates that when there is an extra strain the eyeball often contracts in such a way that the fluid in the eyeball is forced under the retina, and in such area of the retina as is detached there is no sight. There are two causes which bring about this result, disease and a physical strain, and the medical testimony of the appellee indicated that the strain caused by lifting and reaching might have caused this loss of the sight of the eye. Upon June 6 following the accident, Mrs. Bennett wrote to the appellant association, advising it that Mr. Bennett was in bed and having trouble with his eye, and "that the retina had become almost entirely detached. * * * Mr. Bennett does not know whether he is entitled to anything under his policy or not. He is perfectly well, so apparently disease was not the cause of this trouble and yet he cannot point out a specific accident. I am writing you simply to place the matter before you just as it is." In this letter she gave the association the name of the oculist who was treating him. Ten days later she described the work that Mr. Bennett had done with the carpenter, and stated: "The doctors believe that his trouble started the afternoon before, while working with the carpenter."

■ It is sometimes a disputed question whether an "accident" has occurred, for it is not every trivial mishap or occurrence that the insured must, under such a policy, regard as an accident. *George v. Aetna Casualty & Surety Co.,* 121 Neb. 647.

In discussing the term "accidental means," as used in policies of insurance, we must interpret such term according to the usage of the ordinary man, and to eliminate all of those cases where the injury happened as a foreseeable result of an event voluntarily set in motion is

contrary to the common understanding of such terms, and tends unfairly to limit such policies to cases where the insured is guilty of no negligence. *Wiger v. Mutual Life Ins. Co.*, 205 Wis. 95.

■ In the case of *Lewis v. Ocean Accident & Guarantee Corporation*, 224 N. Y. 18, 7 A. L. R. 1129, we find a very interesting opinion by Judge Cardozo. In this case the insured had a pimple on his lip, which, when pricked, carried a germ known as staphylococcus aureus into the underlying tissues of his face, and, in spite of remedies applied by the physician, it spread toward the eye, and 12 days later his death ensued. The question arose whether the infection was the result of an accident, making the insurance company liable. Judge Cardozo says: "Unexpected consequences have resulted from an act which seemed trivial and innocent in the doing. Of itself, the scratch or the puncture was harmless. Unexpectedly it drove destructive germs beneath the skin, and thereby became lethal. To the scientist who traces the origin of disease there may seem to be no accident in all this. * * * But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man. * * * Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test—the one that is applied in the common speech of men—is also the test to be applied by courts." *United States Mutual Accident Ass'n v. Barry*, 131 U. S. 100; *Lewis v. Iowa State Traveling Men's Ass'n*, 248 Fed. 602; *Western Commercial Travelers Ass'n v. Smith*, 85 Fed. 401, 40 L. R. A. 653; *Brintons v. Turvey* (1905) App. Cas. 230, 2 Ann. Cas. 137; *Ismay, Imrie & Co. v. Williamson* (1908) App. Cas. 437, 99 L. T. n. s. 595; *Hood & Sons v. Maryland Casualty Co.*, 206 Mass. 223, 30 L. R. A. n. s. 1192, 138 Am. St. Rep. 379; *Aetna Life Ins. Co. v. Portland Gas & Coke Co.*, 229 Fed. 552, L. R. A. 1916D, 1027.

■ It is but natural to find, in such a closely contested

point of law, that many authorities can be cited upon the other side, and in the extensive notes which follow Judge Cardozo's opinion in *Lewis v. Ocean Accident & Guarantee Corporation,* 224 N. Y. 18, as reported in 7 A. L. R. 1129, we find discussed opinions from the courts of England and Scotland, as set out in the brief of appellant, and many others. In some, a very close line is drawn, as in *United States Mutual Accident Ass'n v. Barry,* 131 U. S. 100, in which a judgment was affirmed where death was due to an injury to the duodenum as a result of jumping from a low platform. The charge which the court approved made the right of the jury to find "accidental means" dependent, not upon the mere fact of an injury, but upon the occurrence of something unforeseen or unexpected, as an involuntary strain of the body, which brought about the alleged injury. But the jury were told that if he jumped from the platform and alighted upon the ground in the way he intended to do, and nothing unforeseen, unexpected, or involuntary occurred, then any resulting injury was not effected through any "accidental means."

Accidental means include those which produce effects which are not their natural, probable, or expected consequences, and this court has passed upon a somewhat similar case, where a plaintiff picked up a dumb-bell, said to weigh 450 pounds, which got out of balance by his failure to hold it in the center of gravity, and, in a great exertion to get it balanced, one of the ligaments of his back gave way, and Judge Sullivan, in deciding the case, held in *Rustin v. Standard Life & Accident Ins. Co.,* 58 Neb. 792: "The contract right to indemnity was not lost because the injury resulted from overexertion, unless the overexertion was conscious and intentional. *Manufacturers Accident Indemnity Co. v. Dorgan,* 58 Fed. 945, 952; *Johnson v. London Guarantee & Accident Co.,* 115 Mich. 86. Surely, it cannot be said as a matter of law that the plaintiff was aware of the probable result of his act, or that he acted with a reckless disregard of consequences likely to ensue. That he failed to accurately

gauge his own strength, or else to correctly estimate the weight of the dumb-bell, is evident; but accident insurance is not designed to furnish indemnity only in cases where the policy-holder orders his conduct with grave circumspection and a provident foresight of consequences." See *Horsfall v. Pacific Mutual Life Ins. Co.*, 32 Wash. 132, 63 L. R. A. 425, 98 Am. St. Rep. 846; *Atlanta Accident Ass'n v. Alexander* (1898) 104 Ga. 709, 42 L. R. A. 188, 4 Am. Neg. Rep. 616, in which a blacksmith was ruptured while using a heavy hammer; *Young v. Railway Mail Ass'n* (1907) 126 Mo. App. 325, in which a railway mail clerk, in lifting a heavy sack of mail, ruptured a blood vessel in his lung.

Appellant insists that instruction No. 4 eliminated the question whether the injury was caused by accidental means, and told the jury that there was an accident as a matter of law, and that for such error this case should be reversed. Yet the first sentence of this instruction reads as follows: "You will therefore immediately turn your attention to the question of whether or not the plaintiff suffered an accident in moving the steps or stairs described in the petition and if so whether said accident was the sole and independent cause of the loss of his left eye, and whether it occurred by external and violent means." We find no error in this instruction or any of the others.

The insured was in good health; the evidence discloses no disease which could cause the injury to the retina. The medical testimony shows that a strain of the nature which occurred in this case may cause the exact displacement of the retina which occurred in this case. Many authorities cited hold that this would be an accident. The jury were justified, under the evidence and the instructions, in finding a verdict for the appellee. There being no error in the record, the judgment of the district court is affirmed, and an additional attorney's fee of $100 is taxed in this court.

AFFIRMED.