CLARK, Respondent, v. LONDON & LANCASHIRE INDEMNITY COMPANY OF AMERICA, Appellant.

*October 4—October 29, 1963.*

For the appellant there were briefs by *Gibbs, Roper & Fifield* of Milwaukee, and oral argument by *Richard S. Gibbs.*

For the respondent there was a brief by *Affeldt & Lichtsinn,* and oral argument by *Eldred Dede,* all of Milwaukee.

CURRIE, J.    There are two issues which we find necessary to consider on this appeal.  These are:

(1) Was defendant's motion procedurally defective on the ground that it failed to comply with sec. 270.635 (2), Stats.?

(2) Were the damages sought from plaintiff by Kamke and the other claimants "caused by accident" within the terms of the policy of insurance?

Because of our conclusion with respect to this second stated issue we find it unnecessary to pass on a third issue raised in the briefs, viz., whether plaintiff breached the covenant of the policy which required him to give defendant timely notice of the occurrence of any alleged accident.

### Sufficiency of Defendant's Motion Papers.

Plaintiff contends that defendant's motion papers failed to comply with the requirements of sub. (2) of sec. 270.635, Stats. If plaintiff is correct in this contention the order appealed from would have to be affirmed on this procedural ground and we would not reach the other issue relating to the merits.

Sub. (2) of sec. 270.635, Stats., requires that, where a defendant moves for summary judgment, there must be filed an affidavit "of the moving party . . . that he believes . . . that the action has no merit." In the instant case this affidavit was made by one of defendant's counsel. Plaintiff argues that such an affidavit is fatally defective and cites *Dottai v. Altenbach* (1963), 19 Wis. (2d) 373, 120 N. W. (2d) 41, and *Fischer v. Mahlke* (1963), 18 Wis. (2d) 429, 118 N. W. (2d) 935. The distinction between the *Dottai* and *Fischer Cases* on the one hand, and the instant case on the other hand, was that in *Dottai* and *Fischer* the moving party was an individual while here it is a corporation which can only act, speak, and aver through its agents. This distinction was recognized in *Monroe County Finance Co. v. Thomas* (1943), 243 Wis. 568, 11 N. W. (2d) 190, which held that such an affidavit by counsel for a corporate party was sufficient to support a motion for summary judgment even though it did not contain a statement that affiant had personal knowledge of the facts. Therefore, we find no

merit in the contention that the affidavit was defective because an attorney, not a party to the action, alleged there was no merit to plaintiff's cause of action.

The affidavit by defendant's counsel also stated that affiant "has personal knowledge of some of the facts involved in this litigation and that he has received information with respect to other facts pertinent thereto." The second ground of attack made by plaintiff is that the affidavit is insufficient because the affiant did not have personal knowledge of all the pertinent facts. Sub. (2) of sec. 270.635, Stats., does not require that the moving party's affidavit must state that he has personal knowledge of all pertinent facts. In many situations an individual party would not have such knowledge and would have to resort to information supplied to him in order to make this affidavit. This affidavit does not stand in the same category as affidavits which aver certain specific evidentiary facts. These latter must be made on personal knowledge and not on information and belief. *McChain v. Fond du Lac* (1959), 7 Wis. (2d) 286, 96 N. W. (2d) 607.

Defendant's written motion for summary judgment states that it is based "upon the affidavit of Richard S. Gibbs [1] annexed hereto and including the exhibits therein annexed and incorporated by reference, and upon all of the files, records and proceedings heretofore had herein, including the pleadings, plaintiff's reply to the defendant's demand to admit or deny, and such portions of the adverse examinations of the defendant's agents heretofore taken herein by the attorneys for the plaintiff as may be hereafter specifically and in writing called to the attention of the said Trial Court."

[1] This was an affidavit which identified various documents, copies of which were attached as exhibits and incorporated by reference into the affidavit. Included in these exhibits was the complaint in the Kamke action. A supplementary affidavit by Gibbs was later filed which averred the belief that the claim of plaintiff was without merit.

Plaintiff attacks this incorporation of the pleadings in the case because they state ultimate facts of which the pleader may or may not have had personal knowledge. Apparently it is plaintiff's position that defendant, by referring to the pleadings in its motion, admitted the truth of all allegations in the pleadings. This is an erroneous assumption. If the defendant had made no reference to the pleadings in the motion, it still would have been the duty of the circuit court to examine the pleadings and to accept as verities those allegations of fact not specifically denied, or deemed to be denied as is the case of facts alleged by answer as an affirmative defense. See *Home Savings Bank v. Bentley* (1958), 5 Wis. (2d) 19, 23, 92 N. W. (2d) 377. The express statement made in defendant's motion that it was grounding the same on the pleadings as well as the Gibbs' affidavit and other papers of record gave no greater legal effect to the role accorded pleadings on a motion for summary judgment than would be the case if the pleadings had not been mentioned. Furthermore, sub. (2) of sec. 270.635, Stats., does require a supporting affidavit by a party having personal knowledge of the facts, averring to the truth of ultimate facts alleged in the pleadings which neither have been expressly denied, nor are deemed to be denied.

Plaintiff also attacks the reference in the motion to such portions of adverse examinations "as may be hereafter specifically and in writing called to the attention of the said Trial Court." In *Commerce Ins. Co. v. Merrill Gas Co.* (1955), 271 Wis. 159, 168, 169, 72 N. W. (2d) 771, it was held that a deposition on adverse examination, or parts of the same, may be effectively used for the purpose of setting forth evidentiary facts in connection with motions for summary judgment, provided that the evidentiary matters from the deposition are stated in an affidavit, "or are in-

corporated therein in whole or relevant part by proper reference." Sub. (2) of sec. 270.635, Stats., requires that where "documents or copies thereof" are to be used on a motion for summary judgment they are to be set forth in an affidavit of a "person who has knowledge thereof." The purpose of this requirement is to establish by affidavit the authenticity of the document, or copy thereof. However, no affidavit is required to establish the authenticity of an adverse examination, because this is established by the certificate of the officer before whom taken. See sec. 326.22.

Where an affidavit incorporates an adverse examination or part thereof by reference, there is no requirement that the affiant must state that the facts testified to in the deposition are true. We conclude that the deposition of an adverse examination, which is properly authenticated by certificate of the officer before whom taken, and which has been opened, and identified under the procedure outlined in *Kanios v. Frederick* (1960), 10 Wis. (2d) 358, 364, 103 N. W. (2d) 114, falls without the classification of "documents" as used in sub. (2) of sec. 270.635, Stats. We further hold that it may properly be made use of on a motion for summary judgment by express reference in the written motion as well as by reference in an affidavit.

In *Kanios v. Frederick, supra,* we pointed out, however, that where such a deposition is so voluminous that counsel, in fairness, ought to specify the portions relied upon, the trial court may order that this be done. See also *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. (2d) 238, 247, 105 N. W. (2d) 305. Here the motion itself specified in effect that only those specific parts of the adverse examinations later called to the attention of the circuit court in writing were to be considered on the motion. We approve of this procedure as it insures that a record will

be made of those portions of the adverse examinations which the circuit court may have properly considered in passing on the motion.

Plaintiff's brief quotes a statement from *Dottai v. Altenbach, supra,* page 376, that parts of adverse examinations are generally inconclusive. Whether or not they are in a particular case depends upon the facts of that case. A positive statement of fact made in an adverse examination, not controverted by other portions of the testimony of the witness nor by affidavit, may be sufficient to establish a fact as a verity on a motion for summary judgment.

### *Insurance Coverage Issue.*

The insurance policy issued by defendant, upon which suit was brought by plaintiff, described the business of plaintiff as "Operation of Gravel Pits" and insured the premises on which such gravel pits were operated. The portion of the definition of the hazards insured, which is material to this controversy, is: "The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto, . . ." The operations themselves are described as "Sand or Gravel Digging" subject to certain exceptions not material hereto.

There were two separate coverage clauses in the insuring agreement portion of the policy, one covering bodily injury liability, and the other property-damage liability. The bodily injury clause obligated defendant, "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, *caused by accident* and arising out of the hazards hereinafter defined." (Emphasis supplied.) The

coverage clause with respect to property-damage liability contained the same requirement that the damages defendant undertook to pay must have been "caused by accident."

The crucial issue is whether damages caused by a long-continuing course of action, in the nature of the maintenance of a nuisance, constitutes damages "caused by accident" within the meaning of the policy.

Forty-seven thousand dollars which was paid by plaintiff in settlement of claims, which he now seeks to recover from defendant, was paid to Kamke and his 193 coplaintiffs as his contribution toward a total settlement payment of $92,000 to settle the claims which were made in the suit against plaintiff, plaintiff's wife, the town of Wauwatosa, A. O. Smith Company, and Pabst Brewing Company. The other $1,900 paid by plaintiff to settle claims was paid to other persons similarly situated to the plaintiffs in the Kamke action. This action was one in equity to abate the nuisance and for damages. See *Kamke v. Clark* (1955), 268 Wis. 465, 67 N. W. (2d) 841, 68 N. W. (2d) 727. The complaint therein alleged that for several years Clark and his wife had been permitting their gravel pit to be used for dumping purposes for the disposal of refuse, the dumping of garbage, and other putrid and combustible refuse material; and that:

". . . by virtue of the manner in which defendants Clark managed and operated their property, and the other defendants dumped their refuse into said dump, a large amount of water accumulated in the bottom of said dump, and that besides the pickling wastes dumped onto the east bank of said pit, large amounts of garbage floated about on said water, consisting of beer cans, discarded food containers, such as salmon, soup and kraut cans, milk containers, along with apples, cabbage, cucumbers, sweet corn, bread, fruit peelings, etc.; that said putrid mass attracted many flies and rats, and produced hydrogen sulfide gas which permeated

the neighborhood. That said condition has existed since April, 1953.

"...

"That by reason of the foregoing, said dump produced a hydrogen gas which permeated the entire neighborhood, brought about a plague of rats and flies, and became a public nuisance, and in addition thereto it became a nuisance to each plaintiff herein, because it was adjacent to each plaintiff's residence, and rats and flies invaded their premises; that said defendants, after they discovered or should have discovered that they were causing said nuisance, failed to abate such nuisance within a reasonable time but they, on the other hand, continued to dump in their garbage and refuse and add to said nuisances."

The foregoing allegations were followed by a description of the particular kinds of injuries sustained by Kamke and others as a result of hydrogen sulfide gas emanating from the dump maintained by Clark.

Clark and his wife by their answer to the complaint in the Kamke action admitted that the other defendants named in such action, namely, town of Wauwatosa, A. O. Smith Corporation, and Pabst Brewing Company, had dumped materials on plaintiff's land, but with one excepted instance, denied on information and belief that the materials dumped were of a nature to cause harm to others. The excepted instance was the dumping of approximately 8,000 gallons of spent pickling acid by A. O. Smith Corporation in July, 1953, which was done without the consent of the Clarks. In a counteraffidavit by plaintiff Clark's attorney, filed in opposition to the motion for summary judgment, it is stated that this dumping of 8,000 gallons of spent pickling acid was done at the instance of the town of Wauwatosa in an effort to abate the nuisance conditions existing on plaintiff's premises. It also appears from the affidavits filed that the purpose of the dumping operations was to refill excavations resulting from the extraction of gravel.

Many months prior to the commencement of the Kamke action, Milwaukee county had begun an action on February 4, 1953, to enjoin the plaintiff's dumping operations on the ground that it constituted a public nuisance. The complaint alleged that because of the dumping there had been emitted into the open air smoke, dust, fumes, and noxious gases in such manner as to cause injury, detriment, nuisance, and annoyance to residents of the vicinity. This action was dismissed on stipulation without prejudice on September 15, 1953. It was immediately followed by another action by the county seeking the same relief, a permanent injunction.

In view of all the foregoing facts it is clear that plaintiff, when he paid out the sums he did to Kamke and other residents in the vicinity of the gravel pit, was paying damages for the maintenance of a nuisance on his premises which had continued for many months. Thus the cause of this damage was not the occurrence of some untoward event that properly might be characterized as an accident but rather a long-continuing harmful condition. In such situations the weight of authority is to the effect that, where a long-continuing nuisance condition alone causes the damage, without the concurrence of some other event, the damage is not "caused by accident" within the meaning of insuring clauses such as those contained in the instant policy.

In *American Casualty Co. v. Minnesota Farm Bureau Service Co.* (8th Cir. 1959), 270 Fed. (2d) 686, an action was brought by an insured against the insurer to recover the amount of judgments entered against the insured for damages caused to property owners residing in the vicinity of the insured's fertilizer plant. The liability policies issued to the insured, upon which suit was brought, insured against damages "caused by accident." The complaints in the actions instituted by the property owners alleged maintenance of a nuisance resulting in land vibrations caused by frequent use of explosives thereby injuring the plaintiff's buildings;

and the emission of noxious odors, fumes, gases, and powders into the air causing injury to health and damaging plant life and buildings. This condition had prevailed for several years. The court held that the damages were not "caused by accident," and in its opinion cited the definition of "accident" given in Webster's New International Dictionary (2d ed., unabridged).[2] In view of this definition the court declared (p. 691) :

"Acts which are done with knowledge and which continue over a long period of time and which continuously cause damage cannot be termed accidents."

The holding in *Farmers Elevator Mut. Ins. Co. v. Burch* (1962), 38 Ill. App. (2d) 249, 187 N. E. (2d) 12, is to the same effect. There the suit before the court was one for declaratory judgment to determine the respective rights and duties of the parties under a liability insurance policy issued to an insured who operated a grain elevator. The policy contained insuring agreements worded substantially the same as those before us in the instant appeal. Prior to the declaratory-judgment suit an action had been commenced against the insured in which the complaints alleged: That the insured over a period in excess of two months had maintained a nuisance in the operation of its elevator and had caused or permitted dust from grain to enter the plaintiffs' premises thereby causing them physical injury and damage to their household goods, lawns, and gardens; and also that the insured had operated machinery over that period of time causing great vibration which damaged plaintiffs' home and

---

[2] "1. Literally, a befalling. *a* An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event. 'Of moving *accidents* by flood and field.' Shak. *b* Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by *accident.* *c* Chance; contingency. . . ."

other buildings and made loud noises which annoyed plaintiffs. The insured demanded that the insurer defend the action, but the insurer asserted that its policy did not apply because it only covered damages "caused by accident." The court held that the policy did not require the insurer to defend the damage suit against the insured because on the record before it the claimed damages were not "caused by accident." The opinion stated (p. 252) :

"While the word 'accident' does not have a settled legal signification, its generally accepted meaning is the same as the popular understanding or approved usage of the word implies.
" 'Accident' normally designates an unforeseen occurrence, usually of an untoward or disastrous character, or an undesigned sudden or unexpected event of an inflictive or unfortunate character."

A third significant case is *United States Fidelity & Guaranty Co. v. Briscoe* (1951), 205 Okla. 618, 239 Pac. (2d) 754. There an insured contractor sought to recover from the insurer the amount of attorney fees and expenses incurred by him in defending certain damage suits. The insuring clause in the contractor's liability policy made the insurer liable to pay the damages the contractor became obligated to pay that were "caused by accident." Over a four-month period the contractor had unloaded cement from railroad cars. The dust from the unloading operations is what gave rise to the damage suits. The court held that no accident had occurred within the meaning of the policy, and declared (p. 621) :

"Such an event as an accident within the insurance policy herein sued upon is a distinctive event that takes place by some unexpected happening, the date of which can be fixed with certainty."

Cf. also *Kuchenberg v. Hartford Accident & Indemnity Co.* (9th Cir. 1955), 226 Fed. (2d) 225, and *C. Y. Thoma-*

*son Co. v. Lumbermen's Mut. Casualty Co.* (4th Cir. 1950), 183 Fed. (2d) 729. These are not nuisance cases but some of the reasoning advanced in holding that no "accident" occurred within the provisions of liability policies is pertinent to the instant case.

A case contra to the hereinbefore-cited nuisance cases is *Wolk v. Royal Indemnity Co.* (1961), 27 Misc. (2d) 478, 210 N. Y. Supp. (2d) 677. There suit was brought on a contractor's liability policy, which contained the usual "caused by accident" provision, to recover the expenses the insureds incurred·in defending a damage action. This latter action had been instituted against the insureds which charged that, in constructing a golf course, they had changed the contour of the land so as to artificially raise hills and mounds near the boundary line. It was further alleged that when it rained this condition caused water to be funneled with great force onto the neighboring land causing great damage, and that this damage was the result of the original construction and maintenance thereafter of the condition causing injury. The insureds defended the action, and secured its dismissal. The court held that the damage claimed in this prior nuisance action was "caused by accident" within the meaning of the policy. We believe that this is a minority view and extends the meaning of the word "accident" beyond its common and ordinary meaning. If the rainstorm which produced the flood of water was an unprecedented and wholly unexpected one, such as occurred in *O'Rourke v. New Amsterdam Casualty Co.* (1961), 68 N. M. 409, 362 Pac. (2d) 790, then there would have been an event which might properly be termed an accident. However, the opinion in the *Wolk Case* does not disclose that this was the fact. See also *Midland Construction Co. v. United States Casualty Co.* (10th Cir. 1954), 214 Fed. (2d) 665.

As pointed out in *Hutchinson Water Co. v. United States Fidelity & Guaranty Co.* (10th Cir. 1957), 250 Fed. (2d)

892, 894, the policy words "caused by accident" should not be so narrowly construed as to render the policy meaningless by affording no coverage. However, neither should this phrase be so broadly construed that the policy is held to cover all operations of the insured which cause damage. Such a construction would render the words "caused by accident" mere surplusage.

In an article entitled, Provisions of Automobile and Liability Insurance Contracts by Allan P. Gowan, 30 Insurance Counsel Journal (1963), 96, 101, there is stated:

"The underwriters employed the phrase 'caused by accident,' feeling that it concisely expressed their intent that the coverage shall be limited as follows :—
"1. To injuries caused by a sudden and identifiable event with respect to both location and time. This is intended to rule out exposure injuries, incurred over a period of time, such as the harmful effects of obnoxious fumes, stream pollution, vibration or noises."

We quote the above, not because the underwriters' intent controls judicial construction of the phrase "caused by accident," but because we consider this stated intent is in accord with the law as laid down in most of the decided cases hereinbefore cited dealing with long exposure.

In the instant case the long exposure to injury by the obnoxious fumes was caused not only by the dumping operations but also by plaintiff's failure over many months to take effective steps to abate the nuisance. It necessarily follows that the damages were not "caused by accident" within the meaning of the policy. Therefore, the defendant neither is liable to plaintiff for the amounts that he paid out in settlement nor for the attorney fees and expenses which he incurred in defending the Kamke action.

*By the Court.*—The order appealed from is reversed, and cause remanded with directions to enter judgment dismissing the complaint on the merits.