CITY OF KIMBALL, A MUNICIPAL CORPORATION, APPELLEE, v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, APPELLANT.

206 N. W. 2d 632

Filed April 27, 1973. No. 38704.

O.'Brien & Everson and Darrel J. Huenergardt, for appellants.

John D. Knapp, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

St. Paul Fire and Marine Insurance Company, appellant, appeals from a judgment determining that it had wrongfully denied coverage under a liability policy issued to the city of Kimball. The city paid a judgment rendered against it in favor of Walter Strauch for $5,500. The city brought this action against the company and recovered a judgment for the amount paid, with interest and costs, including an attorney's fee. Appellant perfected this appeal. We affirm.

In 1958, the city of Kimball contracted to have a sewage lagoon system constructed on the Southeast Quarter of the Northwest Quarter of Section 28, Township 15 North, Range 55 West of the 6th P. M., Kimball County, Nebraska. This is the adjoining quarter to land owned by Walter Strauch. The system was completed on April 10, 1959.

In 1963, Strauch made a claim against the city alleging damages arising from seepage. Specifically, he alleged that for three growing seasons prior to 1964 the city continued to use its lagoon, and the discharge therefrom polluted and contaminated the underground

water from which he obtained his irrigation water.

During this time, the city had an insurance policy with appellant which provided in part: " 'To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.' " In addition, the policy provided that the insurance company would defend the city against actions alleging covered injury, sickness, disease, or destruction.

The city made demand on the appellant to assume coverage of the Strauch claim, as well as to defend the action itself. The appellant denied coverage and refused to defend the action.

In the Strauch action against the city the court specifically found: "* * * that the Defendant was negligent in not discovering and then filling the seismograph holes lying beneath the floor of the Defendant's sewage lagoon cells at the time the sewage lagoon was constructed by the Defendant thereby allowing sewage to flow and seep through the seismograph holes into the underground waters from which Plaintiff obtains his irrigation water and thereby polluting and contaminating the Plaintiff's irrigation well."

The parties in this action stipulated that the city's agents and employees inspected the premises upon which said sewage lagoon was constructed prior to the construction thereof, but failed to discover the existence thereon of the seismograph holes referred to in the judgment of the District Court for Kimball County, Nebraska. The question presented is whether this contamination was an accident within the coverage of the policy.

The word "accident" as used in liability insurance is a more comprehensive term than "negligence" and in its common signification the word means an unexpected happening without intention. 1 Long, The Law of Liability Insurance, § 1.15, p. 1-33.

The word "accident" has many meanings, and when used in a contract of liability insurance, unless otherwise stipulated, it should be given the construction most favorable to the insured. Updike Investment Co. v. Employers Liability Assurance Corp. (1936), 131 Neb. 745, 270 N. W. 107. There is in the policy in question no attempt to define the term "accident." Consequently, the meaning of the word most favorable to the insured should be accepted.

The following language from Bennett v. Travelers Protective Assn. (1932), 123 Neb. 31, 241 N. W. 781, is very pertinent herein: "In the case of Lewis v. Ocean Accident & Guarantee Corporation, 224 N. Y. 18, 7 A. L. R. 1129, we find a very interesting opinion by Judge Cardozo. In this case the insured had a pimple on his lip, which, when pricked, carried a germ known as staphylococcus aureus into the underlying tissues of his face, and, in spite of remedies applied by the physician, it spread toward the eye, and 12 days later his death ensued. The question arose whether the infection was the result of an accident, making the insurance company liable. Judge Cardozo says: 'Unexpected consequences have resulted from an act which seemed trivial and innocent in the doing. Of itself, the scratch or the puncture was harmless. Unexpectedly it drove destructive germs beneath the skin, and thereby became lethal. To the scientist who traces the origin of disease there may seem to be no accident in all this. * * * But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man. * * * Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test to be applied by courts.' "

In Cutrell v. John Hancock Mutual Life Ins. Co.

(1945), 145 Neb. 550, 17 N. W. 2d 465, we held:   "An accident within the meaning of contracts of insurance against accidents includes any event which takes place without the foresight or expectation of the person acted upon or affected thereby."

While the Updike case, 131 Neb. 745, 270 N. W. 107, involved an accident within the terms of a standard workmen's compensation and employer's liability policy, the facts indicate the range of interpretation herein. The plaintiff alleged that she was required to work in a place which subjected her to cold drafts of air that impaired her health and caused the injuries of which she complained.   The insurance carrier denied liability on the theory that the claim made by the claimant did not arise out of an accident.   Updike then brought an action under the provisions of the Uniform Declaratory Judgments Act for construction of the policy.   This court said:   "We think the decision in the instant case must be controlled to a great extent by well-settled principles of insurance law.   One of these is that, where the language employed in a policy of insurance is susceptible of more than one construction, that most favorable to the insured will be adopted. * * * 'As used in an indemnity policy such as this, we are of the opinion that the word "accident" means an undesigned and unforeseen occurrence of an afflictive or unfortunate character resulting in bodily injury to a person other than the insured.'   Since this is the ordinary meaning of the word and is more favorable to the insured, under the principles above quoted such definition must be accepted as the meaning of the term, as used in paragraph seven of the policy in question."

In Railway Officials & Employees Accident Assn. v. Drummond (1898), 56 Neb. 235, 76 N. W. 562, this court adopted the following language from American Accident Co. v. Carson, 99 Ky. 441, 59 Am. S. R. 473: " 'While our preconceived notions of the term "accident" would hardly lead us to speak of the intentional killing of a

person as an "accidental" killing, yet no doubt can now remain, in view of the precedents established by all the courts, that the word "intentional" refers alone to the person inflicting the injury, and if as to the person injured the injury was unforeseen, unexpected, not brought about through his agency designedly, or was without his foresight or was a casualty or mishap not intended to befall him, then the occurrence was accidental, and the injury one inflicted by accidental means within the meaning of such policies.' "

The case of Taylor v. Imperial Casualty & Indemnity Co. (1966), 82 S. D. 298, 144 N. W. 2d 856, involved the seepage of gasoline from a gasoline storage tank. That action was against the liability insurers for damages sustained in their refusal to defend an action for injunctive relief and damages. Plaintiff sought damages for amounts expended in protecting adjoining property from seepage on the grounds that the property injury was caused by accident within the terms of the policy. The South Dakota Supreme Court said: "We affirm the trial court's judgment of coverage based upon the findings that the leaks in the underground tank and the escape and seepage of gasoline were the result of negligence and the unintended consequences were caused by accident. Injuries are caused by accident according to the quality of the causes."

A case of similar import is The Travelers v. Humming Bird Coal Co. (Ky. App.), 371 S. W. 2d 35. In October 1956, the company began surface or strip mining on a mountainside in Leslie County, Kentucky. It bulldozed the surface until a bench or shelf was established 30 or 40 feet wide and about 600 feet above the highway at the base of the steep mountain slope. The earth and debris removed was pushed over upon the slope of the mountain with a depth of about 10 feet, and with a width of 30 or 40 feet. Prior to December 1956, the earth mass on the slope began to move or slip, not all at once but gradually and slowly, until it

reached the borderline of a farm below, overrunning the water supply and damaging the farm. The exact time this earth mass passed over the boundary of the farm is not known. When a claim was asserted against Humming Bird, it contacted The Travelers, who refused the defense on the theory that it was not an accident within the terms of the policy. That court said: "The leading defense of defendant Travelers is that the injury to the Melton property was not an accident within the meaning of the policy. Here lies a misconception. The accident mentioned in the policy need not be a blow but may be a process. It is not required that the injury be the result of some contact with the bulldozer or the shelf or a rock hurled over from the shelf. It is not required to be sudden like an Alpine avalanche that upon a shout roars down with an overwhelming rapidity. A glacier moves slowly but inevitably. Where the accident is a process, how long is then not significant whether it takes three hours, three weeks, or months.

"It was unforeseen that the earth removed from the shelf would not secure a firm foothold. Heavy rock and earth do not flow like water. * * *

"This policy should not be interpreted so narrowly or rigidly as to destroy a recovery for a loss clearly traceable to the operation of plaintiff's Coal Company's business. * * *

" 'No rule, in the interpretation of a policy, is more fully established, or more imperative and controlling, than that which declares, in all cases, it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to indemnity, which, in making the insurance, it was his object to secure.' "

Of interest is a Court of Appeals of Louisiana case, Knight v. L. H. Bossier, Inc. (1960), 118 So. 2d 700. That was an action to recover from a contractor for the loss of cattle and for the cost of replacing and repairing

a fence, which contractor's employees had taken and left down, permitting the owner's cattle to escape. The court held that while it may have been perfectly foreseeable to contractor's employees that removal of the pasture fence without notifying the owner of the cattle would permit escape and possible loss or destruction of the cattle, the cause of the loss of the cattle was unforeseen, unexpected, and extraordinary from the standpoint of the owner of the cattle and that the loss was thus caused by accident for purposes of the policy, insuring the contractor against liability for loss caused by accident.

In Hauenstein v. St. Paul-Mercury Indemnity Co. (1954), 242 Minn. 354, 65 N. W. 2d 122, the Supreme Court of Minnesota held: "Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause," and it embraced property damage to a building caused by the application of defective plaster sold by insured to consumers.

In Moffat v. Metropolitan Casualty Ins. Co. of New York (1964, Pa.), 238 F. Supp. 165, the federal court, applying Pennsylvania law, held that emanation of destructive gasses caused by oxidation of coal refuse piles called culm banks, were the result of an accident within a comprehensive liability policy.

In City of Myrtle Point v. Pacific Indemnity Co. (1963, Ore.), 233 F. Supp. 193, the city was sued by a householder alleging the city had for a period of 2 years negligently operated a sewage disposal plant causing property damage. The city's carrier denied coverage on the basis of no accident. That court, in allowing recovery, said: "In absence of intent by insured city to cause harm resulting in damage, its alleged negligence in using malfunctioning or inadequate apparatus in sewage disposal plant, with result that a home was damaged and depreciated, did not negate a causation by

'accident' within policy obligating insurer to pay on behalf of insured for injury or destruction of property as result of accident." Also, from the same case: "Element of unforeseen or unexpected damage or consequence, as distinguished from normal and probable consequence, from negligent act is important in describing causation by 'accident' within a policy."

Appellant calls our attention to Town of Tieton v. General Insurance Co. of America (1963), 61 Wash. 2d 716, 380 P. 2d 127, in which the Washington Supreme Court held that contamination of a property owner's well caused by seepage from a sewage lagoon which was located approximately 300 feet from the well, and which had been constructed by the town with knowledge of the potential hazard of pollution was not caused by accident within the town's liability policy covering injury to property caused by accident. We have no question about that case. It is readily distinguishable from the instant one. The Town of Tieton had several reports in writing that there was a possibility of contamination of the adjoining property owner's well because of the nature of the soil. Disregarding this possibility, it went ahead with construction without making a prior arrangement with the well owner. The court held when, under the facts of the case, the possibility of contamination which had been foreseen became a reality it could not be said that the result was unusual, unexpected, and unforeseen.

In Vappi & Co., Inc. v. Aetna Casualty & Surety Co. (1965), 348 Mass. 427, 204 N. E. 2d 273, the allegations, among other things, referred to injuries to land, buildings, and property caused by a contractor's negligence in failing to take precautions to prevent the diversion of surface water and harmful results from vibrations. The Superior Court of Massachusetts considered these allegations sufficient under its decisions to permit recovery under a clause " 'damages because of injury to * * * property * * * caused by accident.' " The Mas-

sachusetts court held unintended or unforeseen consequences of reckless or negligent acts, if not undertaken with malice or intent to injure the person or property hurt, may be within the definition of "accident."

Appellant argues because the date of the seepage could not be fixed with certainty it lacked a distinguishing characteristic feature of an accident. The general rule is expressed by 2 Richards on Insurance (5th Ed.), § 219, p. 747: "In the absence of any express policy provision in such respect, the inability to fix the exact time when and where an accident occurred does not preclude recovery under the policy." We agree with the Kentucky court in The Travelers v. Humming Bird Coal Co. (Ky. App.), 371 S. W. 2d 35. The accident covered by the policy may be a process. When the accident is a process, how long then is not significant. It is the nature of the process which is important.

A rather extensive research indicates that the courts have not found it possible to give the word "accident" a precise legal definition. In general, the element of an unforeseen or unexpected damage, as distinguished from a normal and probable consequence from a negligent act, is dominant in describing a causation by accident. In most all jurisdictions the courts hold the word has no technical meaning in law, but should be interpreted in its ordinary and popular sense.

We reaffirm what we said in Updike Investment Co. v. Employers Liability Assurance Corp., 131 Neb. 745, 270 N. W. 107: "The term 'accident' has many meanings, and when used in a contract of indemnity insurance, unless otherwise stipulated, it should be given the construction most favorable to the insured." This the trial court did. The parties stipulated that the site had been inspected before the construction of the sewage lagoon, but the seismograph holes were not discovered. On this record, the damage to the Strauch property was something unforeseen, unexpected, extraordinary,

an unlooked-for mishap, and so an accident. The judgment rendered by the trial court is correct.

The judgment is affirmed.

AFFIRMED.

NEWTON, J., dissenting.

I respectfully dissent.

This case involves the construction of a sewage lagoon. Its use resulted in the contamination of underground waters to the damage of a neighboring farmer who recovered from the city of Kimball. The city now seeks to recover from its insurer against property damage "caused by accident."

Seismograph holes had been bored in the area covered by the lagoon and were not discovered until the difficulties mentioned had developed and the city undertook to seal the sides and bottom of the lagoon.

Construction of the lagoon was a deliberate, calculated, and willful act on the part of the city and it was clearly negligent in failing to seal the lagoon and in failing to discover the seismograph holes. Irrespective of the seismograph holes, the propensity of water, or water-bearing substances, to percolate through the ground is a well-known and elemental factor. Everyone is familiar with the way rain or other surface water is absorbed into the earth. It is commonplace in this day and age to find examples of underground water contamination resulting from the use of fertilizers and chemicals in farm operations. It is a matter of common knowledge that such items when used on the surface of the ground will eventually percolate or seep into underground water-bearing strata. It is therefore apparent that the city knew, or certainly should have known, that sooner or later its lagoon would bring about the very type of water contamination that resulted. This was neither a sudden nor an unexpected occurrence, but on the contrary, something that should have been expected and foreseen. This is not an instance

of a break or leak developing unexpectedly in an underground pipe or tank.

The majority opinion is based entirely on the theory mentioned in case after case cited therein, that an accident is an undesigned, unexpected, and unforeseen event. I have no quarrel with that legal proposition or definition. Here the damage inflicted was the result of an intentional act of the city. It was almost certain to occur and certainly should have been anticipated. It was no accident.

The term "caused by accident" has been subject to multiple definitions. It is conceded that it should be construed according to its "commonly accepted meaning." It is generally deemed to refer to a fortuitous circumstance, event, or happening, an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens, an unforeseen or unlooked for event, an unusual or unexpected result, a sudden happening rather than one which continues, progresses or develops, or something extraordinary, out of the usual course of events. See, Black's Law Dictionary (4th Ed.), pp. 30, 31; 44 Am. Jur. 2d, Insurance, § 1219, p. 64.

The only one of these definitions which can, by any stretch of the imagination, be considered applicable to the present case is the one referring to an event which is unusual and is unexpected by the person to whom it happens. That also is clearly inapplicable. Seepage through the ground, as mentioned, is a natural everyday phenomenon familiar to all. When it rains, the water seeps into the ground. With constant replenishment of this surface water, it seeps or sinks deeper and deeper into the ground. It winds up as "underground" water. This is the source of *all* underground water strata. We know that nitrogen fertilizer applied on a farmer's field winds up in, and contaminates, under-

ground water strata. Canals, ponds, and lakes commonly raise underground water levels in adjacent areas and frequently result in "water boils" surfacing in adjoining lands. The use of an unsealed lagoon is similar and is certain to have similar results with or without seismographic holes. The only difference is that the holes let the raw sewage, completely unfiltered, enter directly into underground water strata.

In the case of Town of Tieton v. General Insurance Co. of America, 61 Wash. 2d 716, 380 P. 2d 127, an identical sewage lagoon was constructed. The town officials were well aware of the natural phenomenon of seepage and fully expected it to occur just as the city officials of Kimball and the injured farmer should have, and possibly did, expect it in the present instance. This is not a fortuitous occurrence, nor is it an "unusual or unexpected" event from the standpoint of the damaged landowner. In the identical Tieton case, the court held that contamination of property owners'· well caused by seepage from sewage lagoon, which was located approximately 300 feet from well and which had been constructed by town with knowledge of potential hazard of pollution, was not caused by accident within town's liability policy covering injury to property caused by accident. In the present case it is not admitted that the parties involved anticipated contamination of the underlying water strata but they must be held to have recognized a natural law of nature and to have anticipated the result.

In the field of accident insurance, "The generally accepted rule is that death or injury does not result from accident or accidental means within the terms of an accident policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen except the death or injury. In other words, an accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which pro-

duces or brings about the result of injury or death." 44 Am. Jur. 2d, Insurance, § 1222, p. 70.

The case of Vappi & Co. Inc. v. Aetna Casualty & Surety Co., 348 Mass. 427, 204 N. E. 2d 273, is not in point. In that case the insured had successfully defended the suit brought against him. The insurer had agreed to defend any suit against Vappi alleging an injury caused by accident even though the suit was groundless. The insured sought recovery of attorney's fees and engineering expense incurred in defending the suit when the insurer declined to defend it. Recovery was permitted under the guarantee to defend.

In Albuquerque Gravel Prod. Co. v. American Emp. Ins. Co., 282 F. 2d 218 (10th Cir., 1960), recovery was sought for flooding. The court stated: "Although the rains were heavier and more frequent than usual during the summer of 1955, and the flooding was more extensive, we cannot say as a matter of law that the floods were accidental rather than the normal consequence of heavy rains which were foreseeable by a prudent person. Consequently, assuming negligence in the construction of the ramp, the results of the floods were not accidental."

The case of Gassaway v. Travelers Insurance Co., 222 Tenn. 649, 439 S. W. 2d 605, involved damage to a house due to seepage from a storm sewer. Negligence was involved. The court stated: "The point here is that while negligent acts can and in fact often do support a claim of accident as this word is used in insurance policies, yet it does not follow that all negligent acts so support such claim. Accident and negligence are not synonymous terms. * * *

"In regard to the legal definition of the word 'accident' as used in insurance policies we have conducted a rather extensive research. The courts have not found it possible to give the word so used a precise legal definition. In most all jurisdictions it is held this word so used has no technical meaning in law and should be in-

terpreted in its ordinary and popular sense. It does appear to us that the courts now either give this word a broader meaning or at least apply it to factual situations which the courts not many years ago would not have accepted. * * *

"It is argued here, and we think correctly, that the damage occurring was not intended by any of the parties, and was, in fact, the result of ordinary negligence on the part of V & M Homes. Accepting this argument does not compel the conclusion the damage was caused by accident. The element of foreseeability cannot be ignored. The Circuit Court determined V & M Homes knew these drainage facilities created a risk and under these facts we think V & M Homes could reasonably foresee that what did occur could occur. When a reasonably foreseeable event does occur, it cannot be said to be a result that was unforeseen and unexpected or fortuitous."

In Harleysville Mutual Cas. Co. v. Harris & Brooks, Inc., 248 Md. 148, 235 A. 2d 556 (1966), it was held that the fact that an injury is caused by an intentional act does not preclude it from being caused by accident within liability policy if in that act, something unforeseen, unusual and unexpected occurs which produces the result. Contractor who piled trees and underbrush in 10 to 12-foot piles, added fuel oil and rubber tires, and permitted the fires to burn for 36 hours before they were extinguished was charged with responsibility of foreseeing that a pall of smoke and soot would result, which might damage adjacent properties, and hence resulting damage for which the contractor was held liable was not caused by accident within liability policy covering property damage liability caused by accident.

The case of Farmers Elevator Mutual Ins. Co. v. Burch, 38 Ill. App. 2d 249, 187 N. E. 2d 12 (1962), involved damage caused by dust, noise, and vibration from the operation of a grain elevator. Recovery from the insurer was denied. The court stated: " 'Accident' nor-

mally designates an unforeseen occurrence, usually of an untoward or disastrous character, or an undesigned sudden or unexpected event of an inflictive or unfortunate character * * *. The natural and ordinary consequences of an act do not constitute an 'accident.'"

Hayden v. Insurance Co. of North America, 5 Wash. App. 710, 490 P. 2d 454 (1971), involved an accidental death policy and there was evidence the death resulted from the insured's excessive indulgence in intoxicating liquors. The court held: "When death occurs as result of unusual, unexpected or unforeseen event or events following intentional act or acts, the death is 'accident' within the terms of accident policy but when death occurs as natural result of voluntary act or acts and there is nothing unusual, unexpected or unforeseen which occurs, except the death, the death is not 'accident' and an event or events is not unforeseen, unexpected or unusual if the event or events would normally result from the intentional act or acts. * * *

"'Accident' within terms of accident policy is never present when deliberate act is performed, unless some additional, unexpected, independent and unforeseen happening occurs which produces or brings about the results of injury or death." See, also, Wright v. Western & Southern Life Ins. Co., (Tex. Civ. App.), 443 S. W. 2d 790 (1969).

The case of City of Aurora v. Trinity Universal Ins. Co., 326 F. 2d 905 (10th Cir., 1964), held: "Damage caused by sewage backing up from insured city's sewage system into residences as result of heavy, but not unprecedented, rainfall and negligent operation of pump by city to prevent flooding of a lift station was not 'caused by accident' within coverage of comprehensive liability policy."

In Clark v. London & Lancashire Indemnity Co. of America, 21 Wis. 2d 268, 124 N. W. 2d 29, 98 A. L. R. 2d 1037, it was held that an insurance policy for premises used in the operation of a gravel pit covering lia-

bility of the insured for personal injury or property damage caused by accident does not extend to liability for the operation of the premises for a considerable period as a nuisance in permitting the gravel pit to be used for dumping purposes for the disposal of refuse, garbage, and other putrid and combustible material. See, also, American Casualty Co. v. Minnesota Farm Bureau Service Co., 270 F. 2d 686 (1959); United States Fidelity & Guaranty Co. v. Briscoe, 205 Okla. 618, 239 P. 2d 754.

The principles enunciated herein have been followed in Nebraska. In Cutrell v. John Hancock Mutual Life Ins. Co., 145 Neb. 550, 17 N. W. 2d 465, it was held: "Death resulting from an accident is not effected by accidental means where insured brings the assault upon himself by his own wrongful acts, or voluntarily incurs an obvious hazard thereof under such circumstances that he would naturally be presumed to know that the injury is likely to be inflicted, or places himself in a position that may be reasonably expected to bring such an assault upon him."

In Rapp v. Metropolitan Accident & Health Ins. Co., 143 Neb. 144, 8 N. W. 2d 692, it was held: "Where the insured voluntarily submitted to a major surgical operation, to determine the cause of an obstruction of the common bile duct and, as a result of his poor physical condition, died on the operating table during the progress of such operation from surgical shock incident to the operation, and the operating surgeon and his assistants skilfully performed the operation, insured's death was not the result of accident."

When damage results from a willful and deliberate act and such damage is practically certain to occur under the immutable laws of nature, it must be considered to have been intended or recklessly disregarded and it certainly is not "caused by accident."

We should not lose sight of the fact that we are dealing with a contractual agreement, the terms of which

we have no right or authority to alter or rewrite. Unquestionably the damaged landowner had a right of recovery against the city for its tortious act. It does not follow that the city can recover from its insurer *unless the loss is covered under the policy.* "In the absence of a statute to the contrary, the risks insured against under a policy of liability insurance are determined by the terms of the policy and not by the liability of the insured. And, if plainly expressed, insurers are entitled to have such limitations construed and enforced as expressed." Marx v. Hartford Acc. & Ind. Co., 183 Neb. 12, 157 N. W. 2d 870.

WHITE, C. J., and BOSLAUGH, J., join in this dissent.