The BENEDICTINE SISTERS OF ST. MARY'S HOSPITAL OF PIERRE, SOUTH DAKOTA, a South Dakota nonprofit corporation, Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a capital stock company of St. Paul, Minnesota, Appellee.

No. 86-5120.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1986.

Decided April 7, 1987.

Hansen, District Judge, sitting by designation, dissented and filed opinion.

* The HONORABLE DAVID R. HANSEN, United States District Judge for the Northern District of

James Robbennolt, Pierre, S.D., for appellant.

Ronald J. Hall, Aberdeen, S.D., for appellee.

Before LAY, Chief Judge, MAGILL, Circuit Judge, and HANSEN,* District Judge.

MAGILL, Circuit Judge.

The Benedictine Sisters of St. Mary's Hospital of Pierre, South Dakota ("Insured") appeal an adverse declaratory judgment of non-coverage in favor of St. Paul Fire & Marine Insurance Company ("Insurer") in this diversity action. We reverse the judgment of the district court, and hold that the Insured's property damage resulting from its malfunctioning hospital boiler was covered as a "sudden accident" under its policy with the Insurer. This case is remanded to the district court for resolution of whether the hospital's employees may recover under the insurance policy, despite its limitation to damage to property "of others."

## I. BACKGROUND.

The claims giving rise to this action occurred from a buildup of soot over a period of many years in the hospital's heating system and boiler stack. In December 1982, the Insured first received informal complaints from some of its employees of damage to the finishes of their automobiles while the vehicles were parked in the hospital parking lot. The employees identified the smoke stack of the hospital's boiler plant as the source of the offending discharge. Apparently the boiler had malfunctioned, causing an acidic discharge of soot. In response to the complaints, the Insured undertook an investigation to determine the cause of the damage, bringing in outside experts to test its boiler plant machinery.

Iowa, sitting by designation.

In June 1983, the Insured attempted to eliminate the problem through several applications of a commercial soot removal compound, "Soot Sweep." The product was intended to loosen and cause the removal of the soot deposits on the heat exchange surfaces of the boiler. The manufacturer's literature on the Soot Sweep compound did not indicate whether the soot would be oxidized or discharged, however. To activate the product, the Insured ran the boilers at full capacity. The result was a temporary increase in the discharge of damaging soot onto vehicles in the parking lot, causing more complaints by hospital employees. Following the temporary increase in the soot discharge after application of the soot removal compound, the soot problem abated, but it was not entirely eliminated.

The hospital employees whose vehicles had been damaged thereafter filed formal claims under the Insured's general liability policy with the Insurer which provides, in pertinent part:

**Liability coverage.** We'll pay amounts you and others protected under this agreement are legally required to pay as damages for covered bodily injury, property damage or personal injury claims. *Claims for bodily injury or property damage are only covered if the injury or damage results from an accidental event.*

**Accidental event** means an event that results in bodily injury or property damage *that the protected person didn't expect or intend to happen.* * * *

**Property damage** means any damage to tangible property of others that happens while this agreement is in effect. This includes loss of use of the damaged property resulting from the damage. Property damage also includes loss of use of others' property that hasn't been physically damaged if caused by an accidental event that happens while this agreement is in effect. * * *

**Pollution.** We won't cover claims for injury or damage caused by the *continuous or intentional discharge or release* of pollutants such as: Smoke. Vapors. *Soot.* Fumes. Acids. Alkalies. Toxic chemicals, liquids or gases. Or waste materials. *But we'll cover sudden accidents involving pollutants.*

(Emphasis supplied.) The majority of these formal claims were based on damage caused by the cleaning effort. The Insurer denied all of the claims based on the express pollution exclusion.

The Insured then brought this action for a declaratory judgment, based on a stipulated record. The Insured contended, *inter alia,* that the pollution exclusion clause did not bar coverage for the damage to its employees' vehicles, because the discharge of the soot was a "sudden accident." The district court entered judgment of non-coverage in favor of the Insurer. In so ruling, the district court did not find it necessary to rule upon the Insured's Motion to Present Additional Evidence, concerning whether the policy applies to property owned by the hospital's employees, despite its provision defining property damage as "any damage to tangible property of *others.*" (Emphasis supplied.) This appeal followed.

## II. DISCUSSION.

The question presented is whether the discharge of soot constituted a sudden accident involving pollutants, requiring the Insurer to pay for resultant property damage under the terms of the policy. To reach a conclusion on this issue requires both an interpretation of the legally operative meaning of the word "accident" and analysis of the facts. *See Kresse v. Home Insurance Co.,* 765 F.2d 753, 755 (8th Cir. 1985) (whether truck was "hired" within meaning of insurance policy required interpretation of term "hire" and analysis of facts.)[1]

---

1. We note that whether an occurrence was an accident under the terms of an insurance policy is a question of fact for the district court, requiring review under the "clearly erroneous" standard. *See Estate of Wade v. Continental Insur-* *ance Co.,* 514 F.2d 304, 306, 308 (8th Cir.1975) (applying Iowa law). However, there are no disputed issues of fact in the present case because the parties agreed to a stipulated record.

Interpretation of the unambiguous terms of an insurance or other contract is generally a question of law. *See Kresse,* 765 F.2d at 755; *see generally* Childress, "Clearly Erroneous:" Judicial Review Over District Courts in the Eighth Circuit and Beyond, 51 MO.L.REV. 93, 163 (1986). The interpretation of state law by a federal district judge sitting in that forum is entitled to "substantial deference." *See Kifer v. Liberty Mutual Insurance Co.,* 777 F.2d 1325, 1330 (8th Cir.1985). However, this court is not inextricably bound by the district court's ruling and, in an appropriate case, we must reverse if we find that the district court's interpretation of state law is "fundamentally deficient in analysis or otherwise lacking in reasoned authority." *Id.*

The insurance policy in question defines "accidental event" as an event resulting in "property damage that the protected person didn't expect or intend to happen." Similarly, under South Dakota law, the legal definition of the term accident in a liability insurance policy is the same as the popular understanding or usage of the word. *Taylor v. Imperial Casualty & Indemnity Co.,* 82 S.D. 298, 144 N.W.2d 856, 858 & n. 1 (1966) (defining accident as "an undesignated, sudden, and unexpected event"). "[A] harmful condition which is *known* and continues over a long period of time is *not* [an] accident" under South Dakota law. *Id.* at 859 (citing *Tegels v. Western Chevrolet Co.,* 81 S.D. 592, 139 N.W.2d 281 (S.D.1966)) (emphasis supplied). The fact that an occurrence is the result of a continuing condition does not preclude it from being an accident where the insured was unaware of the dangerous condition, however. *Id.* (continuous seepage of gasoline deemed an accident); *see also City of Kimball v. St. Paul Fire & Marine Insurance Co.,* 190 Neb. 152, 206 N.W.2d 632, 637 (1973) (damage from undiscovered seepage from sewage system over three-year period deemed accidental). This is consistent with "[t]he general rule * * * that '[t]he time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged.'"

*Mraz v. Canadian Universal Insurance Co., Ltd.,* 804 F.2d 1325, 1328 (4th Cir.1986) (citation omitted); *see generally* 7A J. Appleman, Insurance Law & Practice § 4492 at 17 (Berdal ed. 1979 & Supp.1986). In determining whether the present claims resulted from a sudden accident, we are thus required to examine whether the Insured expected or intended the harm at the time it occurred.

In the present case, the damage from the buildup of soot in the boiler occurred over a period of time, beginning with the informal complaints to the Insured in December 1982, and continuing until after the attempt to clean the boiler. The majority of the damage occurred as a result of the cleaning efforts. The district court found that any damage from the soot discharge was expressly excluded from coverage under the pollution exclusion clause of the insurance policy, because of its continuous nature. We disagree, based on the contract definition of the term "accident," which is consistent with South Dakota law on the subject.

The initial discharge of soot resulting from the malfunctioning of the boiler system was clearly an accident because the Insured did not expect or intend for the discharge of soot to occur. The fact that this accident resulted from a buildup of soot over a long-term period is irrelevant. *See City of Kimball,* 206 N.W.2d at 637.

Following the initial occurrence, the Insured took goodfaith steps to remedy the situation, by bringing in an outside consultant to evaluate the problem, and attempting to clean the boiler system. However, the secondary damage, occurring after the Insured's attempt to clean the boiler system, and resulting in the majority of the insurance claims filed by hospital employees, also was not expected or intended. Based on the representations at the sale of the cleaning product, the Insured did not know that the cleaning process would cause further discharge of soot from the system, rather than operate through an oxidation process. *See Taylor,* 144 N.W.2d at 859 (distinguishing case "where the harmful condition had been created by the

insured who knowingly permitted the condition to exist"). Thus the property damage resulting from the discharge of soot, both before and after the Insured's attempt to clean the boiler system, was caused by a sudden accident involving pollutants, which was expressly covered by the insurance policy.

Accordingly, the district court's judgment denying relief to the Insured is reversed. This case is remanded for consideration of the Insured's Motion to Present Additional Evidence and resolution of the issue of whether the hospital employees may recover under the policy.

HANSEN, District Judge, dissenting.

I respectfully dissent.

Unlike *Taylor v. Imperial Casualty & Indemnity Co.*, 82 S.D. 298, 144 N.W.2d 856 (1966) and *City of Kimball v. St. Paul Fire & Marine Insurance Co.*, 190 Neb. 152, 206 N.W.2d 632, 637 (1973), the insurance policy in question here states "[w]e won't cover claims for injury or damage caused by the continuous or intentional discharge or release of pollutants ... But we'll cover sudden accidents involving pollutants." Applying this unambiguous language, the district court correctly held that damage resulting from the soot discharge in the six months before June, 1983 was excluded from coverage. During this time the soot damage was continuous, and plaintiff knew the likely source of the pollution was its smoke stack.

Similarly, applying the clearly erroneous rule to the district court's determination that the June, 1983 cleaning was not an accident, the district court's order should be affirmed. This was a question of fact for the district court. *See Estate of Wade v. Continental Insurance Co.*, 514 F.2d 304 (8th Cir.1975). The clearly erroneous rule applies to a conclusion based on inferences drawn from undisputed facts. *See U.S. v. United States Gypsum Co.*, 333 U.S. 364, 394–395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746, 765–766 (1948). This court does have a greater latitude of review here than it would be in an appeal from a jury verdict. *Gay Lib v. University of Missouri,*

558 F.2d 848, 853, n. 10 (8th Cir.1977). The stipulated facts amply support the district court's finding that the plaintiff could have reasonably expected what happened when its employees used the soot sweep compound. Those facts show that the boilers were intentionally set in a "high fire" configuration which plaintiff well knew would result first in an increased production of the usual gases and pollutants normally attendant to oil fired boilers and, second, in an increased velocity of the gases emitted from the smoke stack. The "soot sweep" compound was deliberately added to the fire for the intended purpose of loosening and cleaning the accumulated soot from the boilers and stack. Plaintiff should well have expected that if the purpose of the plan was fulfilled, the loosened soot would likely be swept up and out the stack to rain down on cars in the parking lot. Since the policy definition of "accidental event" speaks in terms of expectation, it is not necessary that plaintiff "know" for a certainty that the soot sweep compound would only loosen rather than oxidize the soot deposits. Indeed the South Dakota definition of "accident" relied upon by the majority (and with which I agree) contained in *Taylor* includes the element of forseeability ("an event that takes place without one's *foresight....*") (emphasis added). There was nothing sudden or accidental about the plaintiff's deliberate efforts on four successive Mondays to clean its boilers and smoke stack. The results were foreseeable and therefore to have been expected, and were not accidental.

Accordingly, I would affirm the district court's judgment.