[No. 36243. Department Two. April 4, 1963.]

THE TOWN OF TIETON, *Respondent*, v. GENERAL INSURANCE COMPANY OF AMERICA, *Appellant*.*

*Halverson, Applegate, McDonald & Weeks* and *Bruce Maines,* for appellant.

*Velikanje & Moore,* for respondent.

DONWORTH, J.—This is an appeal from a judgment of the Superior Court for Yakima County holding appellant, General Insurance Company, liable under the provisions of a liability insurance policy issued by it to respondent, Town of Tieton, a municipal corporation of the fourth class.

*Reported in 380 P. (2d) 127.

Respondent town constructed a sewage lagoon adjacent to the property of David and Jean Pugsley. Located on the property is a well from which the Pugsleys obtained their domestic water supply. The sewage lagoon was constructed approximately 245 to 300 feet (estimates varied) from the Pugsley well, which is 165 feet deep and is cased to a depth of 130 feet. As a result of the operation of this sewage facility, the Pugsley well became contaminated.

Thereafter, the Pugsleys recovered a judgment against the town on the theory of nuisance and unconstitutional damaging. Respondent claims that the injury to the Pugsley well was "caused by accident" within the meaning of the insurance policy issued by appellant, which contains the following pertinent provision:

"To pay on behalf of the insured all sums . . . imposed upon him by law; . . .
" (c) for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

The case was tried to the court on the basis of certain stipulated facts, documentary evidence, and testimony, the latter being both oral and by deposition. It was stipulated that contamination of the well from the lagoon was caused by seepage or infiltration through the soil after the seepage penetrated the ground water flow and percolated through the soil below at an extremely slow rate of travel. It was also stipulated that it was impossible to determine precisely when the Pugsley well became contaminated by the lagoon after its operation began.

It was further stipulated that the lagoon was designed by and constructed upon the advice and with the approval of Messrs. Gray & Osborne, professional engineers employed by respondent. The lagoon was constructed by respondent in a manner which was approved by state and local health agencies. It was operated precisely in the manner planned, expected, desired and intended, and in the same manner as numerous other sewage lagoons similarly designed and planned have operated. However, respondent did not intend that the Pugsley well would

become contaminated. The record indicates that seepage is a normal and expected result of the operation of this type sewage facility. The extent of the seepage depends upon the composition of the soil and strata of the earth.

There is no dispute over the fact that the state agencies, the town, and the engineers recognized the possibility of contamination of the Pugsley well. The following is an excerpt from an October 29, 1956, memorandum from the State Department of Health to the director of the State Pollution Control Commission:

"We think that the town should be informed of the possibility of the lagoon contaminating the private well adjacent to the lagoon site with the possibilities of an injunction being placed on the project unless arrangements can be worked out with the owner prior to the starting of the project. We think the town has an obligation to provide satisfactory water service to the house in event the well becomes contaminated."

The following letter from the State Department of Health was transmitted to the town with copies to the Yakima County Health Department and to the engineering firm employed by the city:

"STATE OF WASHINGTON
"DEPARTMENT OF HEALTH
"Division of
"ENGINEERING AND SANITATION
"Smith Tower
"Seattle 4

"November 16, 1956

"Honorable Mayor and
Town Council
Tieton, Washington
"Attention: C. J. Campbell, Clerk
"Gentlemen:

"We were glad to hear that the bids on the sewer system were well within the estimated cost and we hope that the town will be able to proceed with the project as planned.

"In reviewing the plans for the project, we noticed one item that we felt we should call to your attention so that you will fully realize the potential problem. The proposed

lagoon is about five hundred feet from an existing house and this house receives its water supply from a well.

"It is impossible to tell if the percolation from the lagoon will affect the water quality of the well, but the potential hazard exists and a possibility of a damage suit against the city exists if the well does become contaminated.

"We suggest that this problem be discussed with your engineer.

> "Very truly yours,
> SANITARY ENGINEERING SECTION
>
> R. K. McCormick
> District Engineer"

The Pugsleys, themselves, through their attorney, wrote to the mayor of Tieton complaining about the construction of the lagoon and threatening to hold the town and the public officials responsible for damages resulting from its installation. This letter complained of the invasion of the Pugsleys' property rights and the creation of a nuisance. However, the only specific fear expressed was that the lagoon would cause an unpleasant odor and attract rats and insects to the area.

Other possible sites for the proposed lagoon were considered by the town but the site that was selected was the only one large enough to accommodate the project and the others were discarded. The town first obtained a 90-day option to purchase the site upon which the lagoon was eventually constructed. This was done for the purpose, among other things, to afford the town an opportunity to investigate the possibility of contamination of the Pugsley well. From the very beginning, the hazard of contamination to this well was recognized. According to the testimony of the mayor, the town council did not discuss the above-quoted letter of November 16, 1956, from the Department of Health during the meeting at which the plan to construct the lagoon was finally approved. The mayor testified that the main basis of his and the town council's determination to assume the risk of the danger of contamination was the fact that the engineers had obtained the approval of the Pollution Control Commission and the State

Health Department regarding the location and construction of the lagoon.

Robert K. McCormick, Senior Public Health Engineer for the Washington State Department of Health, who wrote the above-quoted letter to respondent warning it of the danger of contamination of the Pugsley well, also wrote a letter on behalf of the State Department of Health approving the construction of the lagoon project. (This letter was not produced at the trial.) Mr. McCormick testified that he had consulted with Milton Westin, the engineer employed by Gray & Osborne, who was in charge of the project, and that they both were of the opinion that, if it proved to be necessary because of contamination, the Pugsleys could always obtain water from the town of Tieton.

Mr. Westin testified that, after a copy of the letter of November 16, 1956, was received by Gray & Osborne, the engineering firm consulted further with the town officials concerning the possibility of contamination, and that this was done prior to the commencement of construction. Mr. Westin further testified that Gray & Osborne advised the town that the danger of contamination of the Pugsley well was very slight and that it would not be in the best interest of the town to make other arrangements to eliminate this remote possibility of contamination. (The testimony of both McCormick and Westin was by deposition.)

At this point, not only had the town purchased the lagoon site, but, according to the testimony of the mayor, there was no other suitable site available for that purpose. Strictly speaking, the town then had no choice but either to make some settlement with the Pugsleys before the lagoon was constructed or to proceed with construction and wait and see if any contamination occurred. The town officials deliberately chose the latter course and proceeded with the construction of the lagoon. This meant that they necessarily had to accept whatever hazard existed that the town might damage the Pugsley property as the result of the construction and operation of this public improvement. Private property cannot be taken or damaged for a public use

without just compensation having first been made. See Art. 1, § 16, of the state constitution.[1]

*Cunningham v. Town of Tieton,* 60 Wn. (2d) 434, 374 P. (2d) 375 (1962), is a case involving a factual situation identical with that existing in the lawsuit initiated by the Pugsleys. We characterized that action as "a reverse eminent domain proceeding." That characterization is equally appropriate to Pugsleys' action.

■ Under the language contained in the insurance policy involved in this case, appellant is liable only for damages imposed by law upon the insured because of injury to property caused by "accident." When construing the terms of an insurance policy, the court will give the language used its popular and ordinary meaning, unless it is apparent from a reading of the whole instrument that a different or special meaning was intended or is necessary to avoid an obscure or unreasonable result. *Christensen v. Sterling Ins. Co.,* 46 Wn. (2d) 713, 284 P. (2d) 287 (1955). In *Truck Ins. Exch. v. Rohde,* 49 Wn. (2d) 465, 303 P. (2d) 659 (1956), in accordance with the above rule of construction, we referred to Webster's New International Dictionary (2d ed.) to define the term accident. It was on this decision that the trial court relied for its definition of the word "accident," as is evidenced by the following excerpt from its memorandum decision:

"In the instant case the acts of the Town of Tieton were deliberate and intentional. The result was unusual, unexpected, and unforeseen, thus falling within the definition of accident contained in the Rohde case, supra, 'an accident is " . . . an undesigned and unforeseen occurrence of an afflictive or unfortunate character; . . .'" ' "

---

[1]While not determinative of the issue as to the meaning of the word "accident" in the insurance policy involved in this case, it is interesting to note that this court has held that, where the state or a municipality has damaged private property as the result of the construction of a public improvement, its liability to pay just compensation therefor does not arise because of tortious misconduct but because of the provisions of Art. 1, § 16 of the state constitution. See *Cunningham v. Town of Tieton, infra; Great Northern R. Co. v. State,* 102 Wash. 348, 173 Pac. 40 (1918); *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820 (1913).

In its formal findings of fact, the trial court found that, although the possibility of contamination of the Pugsley well was recognized, it was considered remote. The court included, in its findings of fact, the statement that "the damage to the Pugsley well was unusual, unexpected, and unforeseen," and that the damage was "caused by accident." Whether they be considered findings of fact or conclusions of law, appellant properly assigned error to these determinations.

No one contends that the contamination of the well was intended. Yet, the lack of such intent does not by itself compel us to conclude that such result was "caused by accident." The element of foreseeability cannot be ignored. The trial court gave recognition to this element in its findings. However, the evidence in the record in regard to this element does not support the trial court's conclusion pertaining thereto.

■ The evidence most favorable to respondent supports no more than a finding that respondent took a calculated business risk that the Pugsley property would not be damaged. From a business standpoint, it may have been wise to have taken this calculated risk and to have proceeded with the construction of the lagoon without first condemning the Pugsley property or arranging to supply water to it by means other than their well. But, when, under the facts of this case, the possibility of contamination became a reality, it cannot be said that the result was "unusual, unexpected, and unforeseen."

Even though the factual situation in each instance must be examined in determining whether damage, because of injury to property, has been caused by accident, recourse may be made to analogous cases construing identical insurance provisions in formulating a conclusion to that question. The following cases from other jurisdictions support the position we have taken: *Albuquerque Gravel Products Co. v. American Employers Ins. Co.*, 282 F. (2d) 218 (1960); *M. Schnoll & Son, Inc. v. Standard Acc. Ins. Co.*, 190 Pa. Super. 360, 154 A. (2d) 431 (1959); *C. Y. Thomason Co. v. Lumbermens Mut. Cas. Co.*, 183 F. (2d) 729 (1950); *Hard-*

*ware Mut. Cas. Co. v. Gerrits*, 65 So. (2d) 69 (Fla. 1953); *United Pac. Ins. Co. v. Schaecher*, 167 F. Supp. 506 (1958); *Kuckenberg v. Hartford Acc. & Indem. Co.*, 226 F. (2d) 225 (1955); *United States Fidelity & Guar. Co. v. Briscoe*, 205 Okla. 618, 239 P. (2d) 754 (1951).

█ The second contention of appellant is that the court erred in concluding that it had a duty to defend the Pugsley suit against the town under the following provision of the insurance policy:

"As respects the insurance afforded by the other terms of this policy under Insuring Agreement 1.

"(a) to defend in his name and behalf any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company."

The duty to defend under such a provision is determined by the allegations in the complaint. *Lawrence v. Northwest Cas. Co.*, 50 Wn. (2d) 282, 311 P. (2d) 670 (1957). In the Pugsleys' suit, there were two trials. The complaint on which the first trial was based alleged three causes of action: (1) negligence in the construction and installation of the sewage lagoon, (2) an unconstitutional taking or damaging, and (3) nuisance. Appellant agreed to, and did, defend the first cause of action based on negligence. It refused to defend as to the other two causes of action, and, as to these, respondent provided its own counsel to represent it. It was agreed that this procedure would be without prejudice to the rights and obligations of either party under the insurance policy.

A jury verdict was rendered against respondent on the basis of nuisance. Thereafter, respondent was granted a new trial on the ground that the answers of the jury to special interrogatories submitted to them relating to nuisance and to unlawful taking or damaging were inconsistent.

Prior to the second trial, the Pugsleys amended their complaint by omitting the first cause of action based on the alleged negligence of respondent. At this point, appellant withdrew completely from the defense of the suit and at the second trial the entire defense was provided by respondent.

While an accident may occur without negligence, a complaint, alleging an unconstitutional taking or damaging, or nuisance, by itself, does not allege an accident. See *C. Y. Thomason Co. v. Lumbermens Mut. Cas. Co., supra.* Since the allegations accompanying these theories do not allege facts constituting an accident, appellant was justified in refusing to defend respondent at the second trial.

In our consideration of the problems involved in this case, we have not overlooked respondent's argument that, where the provisions of an insurance policy are ambiguous, we will interpret such provisions most favorably to the insured. *Cf. Selective Logging Co. v. General Cas. Co.,* 49 Wn. (2d) 347, 301 P. (2d) 535 (1956). The rule referred to in that case does not apply here because the record (as pointed out above) does not establish any legal liability on respondent's part to pay damages to the Pugsleys for injury to their property "caused by accident."

Before respondent began construction of the lagoon, the possibility of damaging the Pugsley property as the result of the construction of this public improvement was not only foreseeable but was predicted in writing by the State Department of Health. Respondent was advised thereby that a potential hazard of pollution existed and that a damage suit against respondent would follow such contamination. The materialization of these possibilities cannot reasonably be held to be an accident within the meaning of the insurance policy.

The judgment of the trial court is reversed with directions to dismiss respondent's action with prejudice.

OTT, C. J., FINLEY, HUNTER, and HAMILTON, JJ., concur.

---

July 2, 1963. Petition for rehearing denied.