JOHN McGROARTY, Appellant, v. GREAT AMERICAN INSURANCE COMPANY, Respondent.

Second Department, January 28, 1974.

*Wekstein, Friedman & Fulfree* (*Morton N. Wekstein* and *Richard W. Fulfree* of counsel), for appellant.

*Gottesman, Wolgel & Smith* (*Harold H. Wolgel* of counsel), for respondent.

SHAPIRO, J. In an action against the defendant insurance company based on paragraph (b) of subdivision 1 of section 167 of the Insurance Law for failure to satisfy a judgment which the plaintiff had obtained against the defendant's insured, Colpan Realty Corp. (hereinafter Colpan), the trial court rendered a

judgment in favor of the defendant. The plaintiff, owner of a commercial garage building, had brought a previous action against Colpan, owner of the southerly contiguous parcel of real property, and two of its officers and directors, for damages occasioned to his garage during the course of the construction of an apartment house and its appurtenances on the Colpan parcel.

The defendant had successively issued several policies of insurance to Colpan. The first was a comprehensive general liability policy which covered the period from April 21, 1965 to April 21, 1966. The second, also a comprehensive general liability policy, was to cover the period of one year from April 21, 1966, but it was canceled as of June 10, 1966. A multiperil policy was then issued to cover the period from June 10, 1966 to June 10, 1969. The comprehensive policies covered up to $25,000 for property damage in each accident. The multiperil policy had a property damage liability limit of $100,000.

The plaintiff's complaint in the action against Colpan, *inter alia*, contained the following allegation: " FIFTH: That the said trespass hereinabove alleged was committed by the defendants, unlawfully, wilfully, and wantonly, without any right whatsoever, and despite demands and warnings by the plaintiff and with actual knowledge of the nature of the damage likely to be inflicted and which was in fact inflicted." Colpan notified the defendant, its insurer, of the action, forwarding to it the summons and complaint. The defendant disclaimed liability for the willful trespass done with knowledge of the damage likely to be inflicted. The defendant, however, offered Colpan a gratuitous defense of the action, which Colpan refused.

During the trial of the action against Colpan the plaintiff successfully moved to amend his complaint to allege a cause of action in negligence. The trial court found that Colpan and its two officers were guilty of negligence in the work done by them and that the damage to the plaintiff's garage resulted from this negligence. A judgment was rendered against the three defendants for $84,000, with interest on $81,500 from April 15, 1966 and with interest on $2,500 from January 15, 1967. The total of the judgment, including interest and costs, as entered on April 4, 1968, is $93,861.66.

Section 167 of the Insurance Law provides:

" 1. No policy or contract insuring against liability for injury to person, except as stated in subsection three, or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the fol-

lowing provisions or provisions which are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:     *   *   *

"(b) A provision that in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract, shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract."

As a judgment creditor of Colpan and its officers, the plaintiff brought this action, as above stated, pursuant to the provisions of section 167 against Colpan's insurer for payment of the unsatisfied judgment. Admitting, in its answer, the issuance of the policies and the payment of the premiums thereon, the defendant generally otherwise denied the allegations of the complaint and specifically alleged that its insured had never given notice to it of any accident in accordance with the terms, provisions and conditions of the policies, that the insured had not co-operated as required and that the insured had not established that a claim existed under the policies. It also set forth eight separate defenses (a ninth defense was dismissed), which may be summarized as follows: (1) That the action was for trespass and an injunction and that such claims are not covered by the policies; (2) that the complaint alleged that the acts giving rise to the damage were willful and wanton and that the policy covers only accidents; (3) that the insurer had offered to defend the original action without conceding coverage, but that the offer was declined, and furthermore that the insurer had not been informed of the amendment of the complaint to include a cause of action in negligence until six months after the trial; (4) that notice of the claimed accident, which occurred in April, 1966, had not been given the defendant until December, 1966, when the summons and complaint were forwarded to it; (5) that the coverage afforded by the two policies first issued does not include collapse or structural injury due to grading, excavating, borrowing, filling and backfilling; (6) that the maximum liability was, in any case, $25,000 under the earlier policies; (7) that the claimed accident occurred prior to the

issuance of the multiperil policy; and (8) that the damage arose prior to June 10, 1966, the date of the multiperil policy, except for the minor amount of $2,500.

The Trial Justice found in favor of the defendant insurance company (1) because the damages sustained were not incurred by accident — the only event in which the defendant's obligation to indemnify under its insurance policy could be invoked and (2) since the duty to defend, while broader than the obligation to pay, is to be determined by the allegations of the complaint in the action against Colpan and, since that complaint, before its amendment at the trial, had pleaded a willful and intentional wrong, there was no duty on the defendant either to defend or to indemnify.

In the trial of the instant case there was testimony that the work on the apartment house began about May of 1965 and that the building was substantially enclosed in December, 1965 or January, 1966. An application for a certificate of occupancy was made in May, 1966. There were punch list items to be completed thereafter and the final payment for the job was made in 1967. In the fall or early winter of 1965 the plaintiff made some complaints. In December, 1965 or January, 1966 the plaintiff showed one of Colpan's officers cracks in the garage wall and told him he was afraid there might be a collapse. The plaintiff said he first noticed the damage when the bulldozers and excavating machines were excavating for the foundation and when material trucks were delivering brick and lumber to the job. That would have been from August of 1965 through February of 1966.

It is obvious that the ultimate inutility of the garage building was the result of long continued conduct on the part of Colpan; and it was established in the prior action that such conduct was wrongful, albeit it was then found to have been negligent conduct. From that finding it must be assumed that the trial court in that action concluded that, although the cause of the damage was purposive, the damage was unintended. The plaintiff therefore contends that the damage arising out of the defendant's assured's negligence was accidental and within the coverage of the defendant's three insurance policies.

In granting judgment to the defendant insurance company the Trial Term found that the insured trespassed upon the plaintiff's property in connection with the rough grading and paving of the driveway and the construction of retaining walls and a garbage shed and that these acts, which resulted in a condition which developed over a period of time, were intentional and,

" although the consequences of such acts were not intentional," the plaintiff had given warning that his garage might collapse so that " the extent of the damage was within the realm of foreseeability." In coming to its conclusion the Trial Term relied heavily on the authority of *Jackson* v. *Employers' Liab. Assur. Corp.* (139 Misc. 686, affd. 234 App. Div. 893, affd. 259 N. Y. 559) and *Town of Tieton* v. *General Ins. Co. of Amer.* (61 Wn. 2d 716). In *Jackson* the question was whether an insured landlord, who had paid a judgment against him for the death of the infant child of a tenant in one of his apartments arising out of the landlord's failure and neglect to provide sufficient heat in the apartment in January which subjected the infant to cold and exposure so that he became sick and died late in February, could recover from his insurer the sum he had paid in satisfying the judgment. The insurance policy covered the insured against " bodily injuries, including death * * * resulting therefrom, accidentally sustained by any person or persons while within or upon the premises * * * by reason of the occupation, the use, the maintenance, the ownership or the control of the said premises by the assured " (p. 687). In ruling against the plaintiff on the ground that " the average man * * * would scarcely associate the death of this child with bodily injury," the court said (p. 689) : " The word ' accident,' in the point of view of the average man, conveys a sudden and instant happening, an event of the moment rather than a condition which continues to develop, progress and change through a period of time. According to the mental conception of the average man, it means a happening, not only unexpected and unusual, but one referable to a definite and fixed period of time. (*Jeffreyes* v. *Sager Co.*, 198 App. Div. 446, 447, affd. 233 N. Y. 535.) " The court in the cited case was correct when it applied that test to deny recovery for a death resulting from disease where recovery was sought under a policy insuring against accidental injury and in its ruling that such recovery could be had only if the disease be assignable " to a determinate or single act, identified in space or time " and to " something catastrophic or extraordinary " (p. 689). But the Trial Term in our case erred in applying that standard to the facts here.

While there can be no doubt that the activities of the defendant's insured in connection with its building on the property adjacent to the plaintiff's garage involved clearly purposive continuing conduct, the ultimate effect of which was the damage suffered by the plaintiff's garage, that fact cannot serve to establish that the damage was not caused by accident so as to

be outside the coverage of the policies which the defendant issued to its insured.

In a leading case on the subject, *Messersmith* v. *American Fid. Co.* (232 N. Y. 161), Judge CARDOZO said (pp. 165-166): "Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes. The field of exclusion would be indefinitely expanded if the defendant's argument were pursued to the limit of its logic. Every act, if we exclude, as we must, gestures or movements that are automatic or instinctive, is willful when viewed in isolation and irrespective of its consequences. An act *ex vi termini* imports the exercise of volition (Holland, Jurisprudence [8th ed.], pp. 93, 94). Even so, if the untoward consequences are not adverted to — at all events, if the failure to advert to them is not reckless and wanton (cf. Penal Law, sec. 1044, subd. 2) — liability for the consequences may be a liability for negligence * * *. The occupant of a dwelling leaves a flower pot upon the window-sill, and the pot, dislodged by wind, falls upon a passing wayfarer (N. Y. City Ordinances, § 250). The position of the flower pot is intended, but not the ensuing impact. The character of the liability is not to be determined by analyzing the constituent acts which, in combination, make up the transaction, and viewing them distributively. It is determined by the quality and purpose of the transaction as a whole."

In our case the insured's acts leading to the damage for which the plaintiff sued were clearly intentionally performed in order to make the insured's construction more usable by its tenants and, insofar as those activities may have involved possible trespasses on the plaintiff's premises, they were also willful. But, and this is the important point, the sequel, the collapse of the plaintiff's garage, an effect of those activities, was, to borrow from Judge CARDOZO in *Messersmith* v. *American Fid. Co.* (*supra,* p. 165), "unintended and fortuitous" and is therefore an "accidental" injury (cf. *Baldinger* v. *Consolidated Mut. Ins. Co.,* 15 A D 2d 526, affd. 11 N Y 2d 1026; *Wolk* v. *Royal Ind. Co.,* 27 Misc 2d 478; Restatement, Torts, 2d, § 8 A). In the Restatement, the word "intent" is defined as meaning that "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."

In *Finch* v. *Swingly* (42 A D 2d 1035), in language particularly appropriate here, the court said: "In order to constitute an intentional tort, the conduct must be engaged in *with the desire*

to bring about the consequences of the act. A mere knowledge and appreciation of a risk is not the same as the intent to cause injury (see Prosser, Torts [3d ed.], pp. 31–32, § 8). A result is intended if the act is done with the purpose of accomplishing *such* a result or with knowledge that to a substantial certainty such a result will ensue (1 Harper and James, Torts, p. 216, § 3.3) '' (emphasis supplied).

Nor does the fact that the collapse of the plaintiff's garage was the result, as stated by the Trial Term, of a '' condition which developed, progressed and changed over a period of time,'' make the collapse any the less an accident, since the test is whether the intended acts contemplated the '' unintended and fortuitous '' result. If they did not, then the ensuing result may truly be termed an accident, even though there is a lapse of time between the initial negligent act and the occurrence of the ultimate damage (*Farnow, Inc.* v. *Aetna Ins. Co. of Hartford,* 33 Misc 2d 480).

The fact that there were forewarnings in the forms of cracks and water inflow through the walls of the plaintiff's garage serves only to demonstrate the negligence of the defendant's insured in failing either to cease adding burdens on the land adjoining the plaintiff's garage wall or to take precautions against such additions worsening the damage already resulting from what had been done up to that point.

This case is more like *City of Kimball* v. *St. Paul Fire & Mar. Ins. Co.* (190 Neb. 152; 206 N. W. 2d 632) than *Town of Tieton* v. *General Ins. Co. of Amer.* (61 Wn. 2d 716, *supra*) upon which the trial court relied. In *Tieton,* unlike this case, the insured was seeking recovery from its insurer for damages paid for pollution of the well of an owner of property adjacent to land upon which the insured had built a sewage lagoon. The court there rested its finding that the insured town had taken a calculated risk that the result for which it was successfully sued by the owner of the affected property might not occur on the ground that the town had had reports of contamination of the adjacent property owner's well because of the nature of the soil and, disregarding this probability, nevertheless went ahead with construction of its sewage lagoon. The Washington Supreme Court held that when, under the facts of the case, the probability of contamination *which had been foreseen* became a reality, it could not be said that the result was unusual, unexpected and unforeseen. In the instant case, however, no warning was given to the insured that its activities in connection with its construction of its building, driveway, garbage shed,

etc., would result in the damage which was done to the plaintiff's garage and it is not usual, expected or reasonably foreseeable that the building of a driveway and a retaining wall and a garbage shed will result in collapse of a building on adjoining land.

In *City of Kimball* v. *St. Paul Fire & Mar. Ins. Co.* (190 Neb. 152; 206 N. W. 2d 632, *supra*) the plaintiff city had been sued by the owner of property adjacent to a sewage lagoon the city had built for damage he suffered because the lagoon had polluted the well from which he drew his irrigation water. The city's insurer, which had issued its policy against liability for "injury to or destruction of property * * * caused by accident" (p. 634), disclaimed liability. The city, after defending the landowner's suit and losing, sought recovery from its insurer for the judgment rendered against it and its costs of defending. The Supreme Court of Nebraska ruled for the city, saying (p. 634): "The word 'accident' as used in liability insurance is a more comprehensive term than 'negligence' and in its common signification the word means an unexpected happening without intention. 1 Long, The Law of Liability Insurance, s. 1.15, p. 1–33.

"The word 'accident' has many meanings, and when used in a contract of liability insurance, unless otherwise stipulated, it should be given the construction most favorable to the insured." The court distinguished *Town of Tieton* (*supra*) on the ground that the Town of Tieton had had reports of probable contamination of the adjoining property owner's well because of the nature of the soil and, therefore, it could not contend, when it proceeded with its project, that the result it was sued for was unusual, unexpected and unforeseen. In reaching its result the court reviewed a number of cases dealing with the meaning of the word "accident" and concluded (p. 637): "A rather extensive research indicates that the courts have not found it possible to give the word 'accident' a precise legal definition. In general, the element of an unforeseen or unexpected damage, as distinguished from a normal and probable consequence from a negligent act, is dominant in describing a causation by accident. In most all jurisdictions the courts hold the word has no technical meaning in law, but should be interpreted in its ordinary and popular sense." See, also, *Vappi & Co.* v. *Aetna Cas. & Sur. Co.* (348 Mass. 427), where the Supreme Judicial Court of Massachusetts held allegations of damage to land, buildings and property caused by a contractor's negligence in failing to prevent the diversion of water

*and harmful results from vibration* sufficient under its decisions to permit recovery under a clause "damages because of injury to * * * property * * * caused by accident" (p. 428). The court held that unintentional or unforeseen consequences of reckless or negligent acts are within the definition of "accident" if the acts were not undertaken with malice or intent to injure the person or property hurt.

In *Wolk* v. *Royal Ind. Co.* (27 Misc 2d 478, 484, *supra*), the Appellate Term said: "To the average person an accident — the results of an act — is something which was not done 'on purpose.' The word 'accidental' is the antonym of 'purposely.' It is no answer to say that an insured forfeits his right to coverage for his failure to foresee the consequences of an act because that is simply another way of saying that the insured was negligent; that he, therefore, becomes subject to 'a liability imposed by law,' the very thing the policy expressly insures him against.

"In the instant case it cannot be argued that the insured intended to inflict the damage on the property of the plaintiff as set forth in the complaint in the original action. No such claim was made in that complaint. *Whether the act of the insured be negligent, wanton, willful, or even violative of a criminal statute, if the result of such act was not intended then it is accidental.* This conclusion is buttressed first, by the realization that in almost every accident in which a motor vehicle is involved there has been a violation of the Vehicle and Traffic Law or the Traffic Regulations and, second, by an analysis of authorities" (emphasis supplied).

See, also, *City of Fulton* v. *Great Amer. Ind. Co.* (11 Misc 2d 536, 542, affd. 7 A D 2d 832), where the court said: "'Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes.' (*Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161, 165.) If the consequences are not adverted to, however willful the preceding acts, the supervening outcome is unintentional within the definition of an 'accident'. (*Messersmith* v. *American Fidelity Co., supra.*)"

The defendant also contends that its insured's failure to notify it of the amendment of the complaint in the original action to assert a cause of action in negligence relieved it of any liability under the policy. But this defense ignores the fact that the original complaint not only set forth a claimed trespass but also that the defendant's insured, in erecting an apartment house and as an accessory thereto a parking area and

driveway leading thereto, "did raise the grade of their land immediately adjacent to the common boundary with the plaintiff's land and did raise the grade on the plaintiff's land itself, and did cause a great weight of stones, boulders, and earth, and the surface waters therein contained to be pressed upon the north wall of the plaintiff's garage, and did cause vehicles to pass over the said driveway immediately adjacent to the plaintiff's garage; that the said unlawful trespass of the defendant did greatly increase the vertical and lateral pressure upon the plaintiff's land and upon the plaintiff's building, causing severe damage, and a dangerous condition which constitutes a nuisance." The proof of these allegations at the trial in the original action resulted in the trial court in that action allowing the plaintiff " to amend the pleading to conform to the proof at the end of the plaintiff's case to include a claim for negligence " and to find: " The defendants' activities during the construction of the apartment house parking area, and driveway * * * were carried out and executed with a want of due care under the circumstances, without any regard for the rights of the plaintiff and for the safety of the plaintiff's building and the defendants were guilty of negligence, as a result of which the north wall of plaintiff's garage has been caused to bend, crack, and buckle and to be out of the vertical so that the top of the said north wall has moved southward of the bottom thereof."

Thus, when the defendant received the complaint in the original action it had notice from the language quoted above not only that an aspect of the action against its insured involved damage arising from the insured's want of due care which was within the coverage of its policy, but also that there was a likelihood that any recovery by the plaintiff might be based, as it ultimately was, on accidental damage resulting from its insured's negligence.

Since the duty of an insurer to defend under a liability insurance policy is separate and distinct from the question of the insurer's liability for the payment of any judgment recovered in the action, the insurer must defend its insured if the complaint alleges, as it did in the instant situation, any facts which, if proved, would establish the liability of the carrier under the coverage of the policy (*Prashker* v. *United States Guar. Co.,* 1 N Y 2d 584; *Doyle* v. *Allstate Ins. Co.,* 1 N Y 2d 439, 443; *Davis Supply Co.* v. *Newark Ins. Co.,* 60 Misc 2d 946, 949). The Trial Term's holding that there was no duty on the defendant's part to defend was based on its finding, erroneously in our opinion, that the complaint in the original action failed to

state any facts which, if proved, would establish the liability of the carrier. Since such facts were stated in that complaint, the defendant was under the duty to defend the action and that duty was not met by its offer of a gratuitous defense coupled with an insistence that no coverage of the plaintiff's claim existed under its policy (*Goldberg* v. *Lumber Mut. Cas. Ins. Co. of N. Y.*, 297 N. Y. 148, 152; *American Sur. Co. of N. Y.* v. *Diamond*, 1 N Y 2d 594, 599).

Having found that the defendant's disclaimer of liability and its refusal to defend the action brought by the plaintiff against the defendant's insured was improper and that the defendant is therefore liable, by virtue of paragraph (b) of subdivision 1 of section 167 of the Insurance Law, to the plaintiff for the damage suffered by him, we now come to a consideration of the impact of the other defenses raised by the defendant in its answer.

We have already noted that the defendant received adequate and timely notice of the suit against its insured and that the complaint in that suit alleged facts which, when proved, sustained the claim against its insured as being one for damages arising out of the insured's negligence, even though that complaint spoke in terms of trespass committed unlawfully, willfully and wantonly. In view of the giving of such notice, we find that the fourth defense pleaded by the defendant is without basis in fact or law.

The fifth defense cites a provision in the defendant's insurance policies barring liability for property damage arising out of collapse or structural injury to any building or structures due to grading of land, excavation, borrowing, filling, backfilling, etc., but at the trial the defendant offered no evidence to show that the damage was due primarily to such operations, choosing, instead, to rely on its contention that it was exonerated from any liability under its policy by the fact that the plaintiff's claim sounded in trespass and that its insured had failed to notify it of the amendment of the complaint to assert a cause of action in negligence until six months after the trial of the action against its insured. Moreover, the testimony at the trial showed that the collapse was caused by other factors in addition to grading, excavation, borrowing, filling and backfilling, such as the erection of a retaining wall, paving work on a driveway and the building of a garbage shed, all abutting the plaintiff's garage. Hence, we find the fifth defense to be without substance.

The last three defenses contend that the defendant's maximum liability, in any event, is $25,000, the amount for which

its assured was covered on the two policies first issued. The defendant contends that, since the effective date of the third policy (the $100,000 one) was June 10, 1966, it cannot be held liable thereon since the source of the accident here dated back to April, 1966. As stated at the outset of this opinion, the first policy covered the period from April 21, 1965 to April 21, 1966, the second policy covered the period April 21, 1966 to April 21, 1967 and the third policy covered the period from June 10, 1966 to June 10, 1969.

The testimony shows that in the fall or early winter of 1965 and sometime in January, 1966 the plaintiff advised the defendant's insured that water was seeping through the wall of his garage and cracks were developing in it and warned the insured that the water was coming through when bulldozers, excavating machines and material trucks were delivering brick, material and lumber. The testimony is also to the effect that in the spring of 1966 the defendant's insured did rough grading and paving of a driveway and constructed a retaining wall adjacent to the north wall of the plaintiff's garage, that in late October or early November of 1966 that wall was observed to be leaning to the south and that thereafter it continued to lean more and more in that direction. From November 1966 on, the south wall of the plaintiff's garage developed the same condition and this, in turn, led to the ultimate collapse and total unusability of the plaintiff's garage. These developments covered a period of time from either late fall or early winter of 1965 through 1966 and into 1967. During that period the defendant's insured engaged in the conduct which Justice DONOHOE, in the prior action, found to involve a want of due care and of negligence which was the cause of the damage to the plaintiff's garage. As stated early in this opinion, he granted judgment in the sum of $84,000, with interest from April 15, 1966 on $81,500 (the $2,500 differential as to interest being the amount awarded to reimburse the plaintiff for the cost of the shoring installed by him in January, 1967 to bolster the north wall). As a consequence, the defendant contends that, since Justice DONOHOE granted interest from April 15, 1966 for the damage other than shoring, that date fixed the time when the damage occurred and therefore the $100,000 policy issued on June 10, 1966 cannot be relied upon by the plaintiff. However, subdivision (b) of CPLR 5001 provides that where damages were incurred at various times, interest shall be computed either upon each item from the date it was incurred or "upon all of the damages from a single reasonable intermediate date." Here, the

insured's negligent conduct began sometime prior to or about January, 1966 and continued well past January, 1967, after which the garage suffered partial collapse and became unusable. It is clear from these facts that the date selected by Justice Donohoe was "a single reasonable intermediate date" and included damage suffered by the plaintiff's property at times well after June 10, 1966, the date of the inception of the defendant's $100,000 liability policy. Hence, the plaintiff's claim is enforceable under all three policies and the plaintiff may recover the total amount of his unsatisfied judgment against the defendant's insured.

The judgment appealed from should therefore be reversed, on the law and the facts, with costs, and judgment should be granted in favor of the plaintiff against the defendant as demanded in the complaint, with costs.

Munder, J. (dissenting). The majority opinion argues that the injury was accidental and within the coverage of the insurance policies, since, as Judge Cardozo said in *Messersmith* v. *American Fid. Co.* (232 N. Y. 161, 165), "injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes."

But the word "accident" cannot be so precisely defined as to render the definitions universally applicable. It is to be construed in its relevant context (*Matter of Croshier* v. *Levitt,* 5 N Y 2d 259) and its meaning "is to be determined, not by any legal definition, but by the common-sense viewpoint of the average man" (*Matter of Masse* v. *Robinson Co.,* 301 N. Y. 34, 37). The ordinary concept is that of a sudden happening and not of the sequel of a continuing process (*Jackson* v. *Employers' Liab. Assur. Corp.,* 139 Misc. 686, affd. 234 App. Div. 893, affd. 259 N. Y. 559; *Cosmopolitan Mut. Ins. Co.* v. *Packer's Supermarket,* 72 Misc 2d 980).

In the instant case Colpan was warned in 1965, not long after the inception of its building project, of the damage caused by the operation of heavy machinery in close proximity to the plaintiff's garage wall. It ignored the warnings and continued the damage-producing conduct. The ultimate damage in these circumstances cannot be viewed as unexpected or unforeseen. It was, as the complaint in the prior action originally alleged, the result of trespass, "unlawfully, wilfully, and wantonly" committed, "with actual knowledge of the nature of the damage likely to be inflicted."

In view of my conclusion that the damage to the plaintiff's garage was not the result of an accident and that therefore the

defendant was not liable under the terms of any of the policies issued to Colpan, there is no need to consider the various other defenses advanced by the defendant and discussed at length in the majority opinion. For the reasons stated, I dissent and vote to affirm the judgment.

MARTUSCELLO, Acting P. J., and BRENNAN, J. concur with SHAPIRO, J.; MUNDER, J., dissents and votes to affirm, in an opinion, in which CHRIST, J., concurs.

Judgment of the Supreme Court, Westchester County, dated April 20, 1972, reversed, on the law and the facts, with costs, and judgment granted in favor of plaintiff against defendant as demanded in the complaint, with costs.