301 F.2d 390
 GENERAL AMERICAN LIFE INSURANCE COMPANY, Appellant,
v.
Joan PRIEST; Kim Priest, a minor; Steve Priest, a minor;
Arthur Priest; Lena Hewitt Priest; and Pink Finis
Harrell, as Administrator of the Estate
of Arthur Howard Priest,
deceased, Appellees.
 No. 6863.
 United States Court of Appeals Tenth Circuit.
 March 31, 1962, Rehearing Denied April 30, 1962.
 
 1
 Erl H. Ellis, Denver, Colo., for appellant.
 
 
 2
 George J. McMahill, Denver, Colo., for appellees.
 
 
 3
 Before MURRAH and HUXMAN, Circuit Judges, and RICE, District Judge.
 
 
 4
 EUGENE RICE, District Judge.
 
 
 5
 General American Life Insurance Company, a Missouri corporation, issued a policy of group insurance to Southwestern Bell Telephone Company covering the employees of said company. Arthur H. Priest, a citizen and resident of the State of Arkansas, was an employee of the company and was insured under the policy to the extent of $6,000.00; and in the event of accidental death, he was insured for $6,000.00 additional. His wife, Joan Priest, defendant herein, was the designated beneficiary. The insured died on or about December 25, 1959, at Little Rock, Arkansas, from a gunshot wound in his head.
 
 
 6
 Before this suit was filed, Joan Priest established a residence in Colorado for herself and her two minor children, Kim Priest and Steve Priest. Thereafter, appellant filed this action in the U.S. District Court of Colorado and joined as defendants Joan Priest and her two minor children, and in addition included Arthur Priest and Lena Hewitt Priest, father and mother of the insured, and Pink Finis Harrell, Administrator of the Estate of Arthur H. Priest, and deposited $12,000.00 to be held awaiting further action by the court and requested that defendants be ordered to interplead and to set forth their respective claims against the sum deposited.
 
 
 7
 In its complaint, appellant alleged that the shot that killed insured was fired by Joan Priest and also alleged that the death of Arthur H. Priest was not due to injuries suffered by him through accidental means and that plaintiff's liability was limited to $6,000.00.
 
 
 8
 Joan Priest filed an answer in which she admitted that the shot which killed her husband was fired from a weapon held in her hands at the time. She also alleged that the firing of the weapon by her was neither premeditated, predetermined nor intentional on her part, she affirmatively alleged that the death of Arthur H. Priest was 'accidental, violent and external within the meaning of the policy, and that the death of the insured was not of the type excluded under the terms of the policy denominated exceptions.'
 
 
 9
 The father and mother filed no pleading. The guardian ad litem filed a pleading on behalf of the two minor children seeking to recover only in the event their mother could not recover.
 
 
 10
 The issue in the trial court was between insurance company and Joan Priest, and the ultimate question of fact and law was whether or not the death of insured resulted from accidental means within the meaning of the policy.
 
 
 11
 At a pre-rrial conference on March 3, 1961, the parties submitted the issues as to the facts relating to the death of insured. Paragraphs three and four of said stipulation are as follows:
 
 
 12
 '3. On the night of December 24, 1959, at the home of Arthur H. Priest in Little Rock, Arkansas, said Arthur was absent from his home for a while before 10:30 or 11:00 p.m. and then returned home somewhat intoxicated. He found his wife, Joan Priest, sitting in the kitchen talking with a friend. Said Arthur went to his room, procured his 30 caliber rifle, returned with it in hand to the kitchen and threatened to kill said friend if he did not leave. The friend left as did other guests. Said Aruthur then called his wife Joan vile names, and they had a violent argument. Said Joan tried to call the police and begged said Arthur to leave, but without result. Said Arthur threw the gun onto the floor, but had the gun pointed at said Joan earlier in the argument. Said Arthur continued to beat said Joan and then the picked up the gun (deer rifle) and said that if he could point a gun at her she could point it at him. Said Arthur continued to advance toward said Joan after she had pointed the gun at him, and the gun went off and the bullet hit said Arthur in the head and he died from said cause between midnight and 1:00 a.m. on December 25, 1959.
 
 
 13
 '4. The fact in substance as recited in the foregoing paragraph 3 hereof were presented to a Grand Jury in the State of Arkansas by the legally appointed authorities in that State, and no True Bill was returned against Joan Priest. Joan Priest has not been tried and has not been convicted of any felony on account of such shooting of Arthur Priest.'
 
 
 14
 The parties further agreed and stipulated that the issues of law in dispute are as follows:
 
 
 15
 'A. Is the plaintiff liable under the policy and certificate of insurance for $6,000 (which it admits) or for $12,000?
 
 
 16
 'B. Do the uncontested facts as recited in this stipulation show that Arthur H. Priest suffered loss of his life as the direct result of bodily injuries sustained by him solely through violent, external and accidental means?
 
 
 17
 'C. What party or parties are entitled to receive the proceeds of the insurance?'
 
 
 18
 On July 14, 1961, the matter came on for hearing before Honorable Fred L. Wham, assigned District Judge for the Eastern District of Illinois. After hearing argument of counsel, the judge dictated an oral opinion and decision which was subsequently transcribed by the reporter and filed on August 4, 1961. When the reporter filed a transcript of the proceedings, he designated it as 'Oral Opinion, Findings and Decision.' Before concluding his opinion, the judge directed counsel for the beneficiary 'to prepare proposed formal findings, conclusions and judgment order in compliance with the rule and submit the proposed findings, conclusions and order to opposing counsel, and then to the Court for the Court's signature.'
 
 
 19
 In his opinion, the judge dictated the facts that had been agreed upon by the parties and statement of the issues as dictated by the parties and then made the following statements:
 
 
 20
 'It will be observed that the conflict here was between husband and wife, where the husband was in the role of an aggressor. As I read the stipulations of facts, the conflict, though involving a deadly weapon, did not at any time assume the aspect of a deadly encounter as in the Podesta case, or deadly combat as in the Smith case. The defendant's most threatening act was picking the rifle up from the floor where the husband had placed ti and pointing it at the husband with the remark that if he could point a gun at her, she could point it at him. The husband continued to advance toward her, and the gun went off, causing his death.
 
 
 21
 'I am of the opinion that the husband had no thought that he was putting his life at stake by advancing on his wife under the circumstances, or that he believed he was voluntarily taking a chance of being killed.
 
 
 22
 'I so find. Under such finding, and under all the stipulated facts, and under the law, I believe that the death of Arthur Priest was accidental as defined in the policy, including violent, external means, regardless of the actual intention of his wife, Joan Priest, at the time of the shooting. Personally, I may add that, under all the circumstances, I fully believe that Joan Priest had no intention of shooting or killing her husband.
 
 
 23
 'Under the foregoing findings, and conclusions, I further find and conclude that the defendant, Joan Priest, is entitled, in this case, to recover the $6,000 which constitutes the face of the policy, and also to recover the $6,000 provided in the case of accidental death of the insured, as defined under the terms of the policy.'
 
 
 24
 On August 7, 1961, formal findings of fact and conclusions of law prepared by beneficiary's attorney, at the request of Judge Wham, were signed and a formal judgment entered and filed. The findings prepared by the attorney included the basic findings in the oral opinion, and in addition included the four findings as follows:
 
 
 25
 '6. The conflict which resulted in the death of Arthur Priest was one between husband and wife and one where the husband acted in the role of an aggressor, but although the conflict did not involved a lethal weapon it did not at any time assume the aspect of a deadly encounter.
 
 
 26
 '7. The defendant's wife's most threatening act was picking up the rifle from the floor where the husband had placed it and pointing it at the husband with the remark that if he could point a gun at her she could point it at him.
 
 
 27
 '8. The court finds as an inference from the facts so stipulated that the said Arthur Priest had no thought that he was putting his life at stake by advancing on Joan Priest under the circumstances, or that he believed he was voluntarily taking a chance of being killed.
 
 
 28
 '9. Although not a necessary finding, the court believes that Joan Priest had no intention of shooting or killing her husband.'
 
 
 29
 The trial judge heard the argument of counsel and his comments indicate familiarity with the applicable Missouri law as announced in Podesta v. Metropolitan Co., Mo.App., 150 S.W.2d 596; Perringer v. Metropolitan Co., 241 Mo.App. 521, 244 S.W.2d 607; Smith v. Metropolitan Co., Mo.App., 107 S.W.2d 808. His comments, in our opinion, were not intended to be additional findings of fact, and it is unfortunate that we find the comments labeled as findings of fact.
 
 
 30
 In this type of case the question of whether or not death was accidental turns upon the viewpoint of the insured, and his viewpoint must be determined from facts and circumstances. It is the province of the trial judge to arrive at his decision based upon the facts disclosed and reasonable inferences therefrom. Death of insured may be accidentally sustained even though intentionally inflicted by his adversary, while conversely the insured's death may not be accidental even though the person responsible for his death may have had no intention of killing him.
 
 
 31
 'As is invariably pointed out in the decisions, the true test of the insurance company's liability under such general circumstances as we have before us is whether the insured's injury or death was the natural and probable consequence of his agression or other intentional misconduct, from which it necessarily follows that what is properly to be regarded as a natural and probable consequence in a particular case must depend upon the character of the aggression and the icrcumstances attending it.' Podesta v. Metropolitan Co., supra.
 
 
 32
 The general rule is that when insured assaults another and is killed as a consequence of his attack, his death is accidental unless it was a natural and probable result of his own actions, reasonably foreseeable by him or by a reasonably prudent man in his position.
 
 
 33
 Superficially inconsistent results arrived at in may of the cases are explainable, not on the basis of any disagreement as to general terms of the rule stated, but on the court's varying ideas as to the degree of foresight which should be expected from the insured.
 
 
 34
 A careful analysis of Judge Wham's oral opinion on July 14, after he had heard oral arguments, convinces us that he had made a careful study of the law of Missouri in the following cases, Podesta, Perringter, and Smith, and that he recognized the legal questions were controlled by Missouri law. We are also of the opinion that his comments on the stipulated facts were proper and should be considered as legitimate conclusions and justifiable comment on the agreed facts.
 
 
 35
 The Judgment of the trial court should be affirmed.