**In the Matter of the ESTATE of Irwin Leon WADE, by W. Lawrence Oliver, Appellant,**

**v.**

**The CONTINENTAL INSURANCE CO., Appellee.**

**No. 74–1840.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1975.

Decided April 10, 1975.

W. Lawrence Oliver, Des Moines, Iowa, for appellant.

Robert G. Allbee, Des Moines, Iowa, for appellee.

Before CLARK, Associate Justice, Retired,* and LAY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from a denial of accidental death benefits under an employer's group insurance policy. The action was brought by W. Lawrence Oliver as administrator for the estate of Irwin Leon Wade. On August 14, 1971, the decedent Wade died of gunshot wounds inflicted by his wife, the beneficiary named in the certificate of insurance.[1] The district court ruled, after stipulation of the facts by the parties, that recovery was barred because (1) the decedent's estate failed to give the insurance company timely notice of death as required by the certificate of insurance, and (2) the plaintiff failed to prove that the decedent's death was accidental. We reverse and direct entry of judgment for the decedent's estate.

The stipulated facts show that on January 20, 1969, the decedent received a certificate of insurance from the Continental Insurance Company insuring Irwin Leon Wade against injury and death caused by accident. The certificate was issued pursuant to a group insurance master policy, GSR–1976, issued to the decedent's employer, Frye Manufacturing Company. Wade paid the premiums for the policy through his employer.

The district court found that although Mary Badgarow, a Frye Manufacturing Company employee who served as the "insurance clerk," learned of decedent's death and ceased forwarding his premiums to Continental, this was not sufficient notice to Continental. The court found that Continental did not receive actual notice of the claim until nine months after the shooting, when the administrator of the estate, W. Lawrence Oliver, wrote on May 15, 1972, to Continental's Des Moines office and again to the New York office on June 20, 1972. The district court found that Miss Badgarow was not an agent of the insurance company so that notice to her was insufficient. The court found that the notice given to Continental by Oliver's letters was unreasonably delayed and therefore barred recovery on the policy.

We agree that notice to Miss Badgarow was not notice to Continental. Nevertheless, we hold the finding of unreasonable delay to be clearly erroneous. It is true that under Iowa law, there is a rebuttable presumption of prejudice to the insurer due to delayed notice. See Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 106 N.W.2d 86 (1960). Compliance with such a notice provision is apparently considered a condition precedent to recovery under Iowa law. *Henderson, supra.* Nonetheless, the same rulings hold that where there exists some legal justification or excuse for the delay, then the defendant insurer must demonstrate actual prejudice. Further, even if the delay is not excused, the plaintiff may still recover where he can demonstrate that the company suffered no actual prejudice from the delay. Henschel v. Hawkeye-Security Ins. Co.,

---

\* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

1. Jacqueline Wade was convicted of manslaughter in the state court. Section 633.536 of the Iowa Code Ann. provides that one who feloniously kills the insured cannot recover any part of the policy proceeds. Section 633.-537 provides that if the beneficiary is disqualified under § 633.536, then the insured's other heirs shall take under the will or by intestate succession. In the instant case, the decedent was survived by seven children, the oldest of whom was fourteen at the time of decedent's death.

178 N.W.2d 409 (Iowa 1970); *Henderson, supra.*

The certificate of insurance issued to the decedent contained the following notice clause:

> Notice of Claim: Written notice of claim must be given to the Company within thirty days after the occurrence or commencement of any loss covered by the policy, *or as soon thereafter as is reasonably possible.* Notice given by or on behalf of the insured and/or insured dependent, or the beneficiary to the Company at New York, N. Y., or to any authorized agent of the Company, with information sufficient to identify the insured and/or insured dependent, shall be deemed notice to the Company. (Emphasis added)

Mrs. Wade's manslaughter conviction on May 24, 1972, made her ineligible under Iowa law to receive the proceeds of the policy, and the seven minor children then became the only eligible beneficiaries. Thus, we need not decide whether Mrs. Wade's delay in notifying Continental should bar her from recovery. Our inquiry must instead be whether the children had a legal excuse for the delayed notice.

■ We find that they did. Prior to the opening of the estate in March 1972, the children had no legal representative to make a claim on their behalf. Oliver, acting as attorney for the estate, first gave written notice on May 15, 1972. The two-month delay cannot be said to be so unreasonable as to bar recovery by the estate under the circumstances. *Cf.* Leytem v. Fireman's Fund Indemnity Co., 249 Iowa 524, 85 N.W.2d 921 (1957) (delay of 13 months not unreasonable under the circumstances); Gifford v. New Amsterdam Cas. Co., 216 Iowa 23, 248 N.W. 235 (1933) (delay of five months not unreasonable). Equally important, there exists no evidence to demonstrate that Continental was prejudiced by the delay. As will be discussed the district court relied on the investigation of the shooting conducted by the Des Moines Police Department immediately after the decedent's death. The company was in no way inhibited from having the benefits of both that investigation and the testimony at Mrs. Wade's criminal trial. In light of these circumstances, we hold that notice was given as soon as reasonably possible and that no prejudice to the company resulted from the delay.

We turn now to the insurer's second defense, that the insured's death was not "accidental" within the meaning of the policy. The district court, relying on the transcript of Mrs. Wade's criminal trial admitted by stipulation, found that the shooting should have been foreseen by the decedent, that he had nevertheless voluntarily exposed himself to mortal danger, and hence that his death was not accidental.

The evidence showed that the decedent and his wife had had a long history of domestic quarrels, and had even divorced each other once but had remarried three months before the shooting. On several occasions, Mrs. Wade had been hospitalized after being beaten by her husband. Neither had ever previously threatened the other with death or brandished a gun.

The district court relied on the testimony of one of the police officers who investigated the shooting. The officer testified that when he arrived at the Wade home soon after the shooting, Mrs. Wade told him that she and her husband had quarreled, that he had hit her, and that she had told Wade "If I had a gun I'd shoot you." Wade, she said, then got a gun from another room, loaded it, handed it to her, and told her to go ahead and shoot. She did.

We agree for the most part with the district court's thorough analysis of the meaning of the term "accidental." Nevertheless, we disagree with the factual conclusion that this death was not accidental.

■■ Iowa follows the general rule that the determination of whether an injury is accidental must be made from the point of view of the insured and

what he intended or should reasonably have expected. Comfort v. Continental Cas. Co., 239 Iowa 1206, 34 N.W.2d 588 (1948); Lickleider v. Iowa State Traveling Men's Ass'n, 184 Iowa 423, 166 N.W. 363, 168 N.W. 884 (1918).

> The word "accident" * * * means happening by chance, unexpectedly taking place, not according to the usual course of things.
>
> . . . [I]f the insured does a voluntary act, the natural and usual, and to be expected result of which is to bring injury upon himself, then a death so occurring is not an accident. But if the insured does a voluntary act, without knowledge or reasonable expectation that the result thereof will be to bring injury upon himself from which death may follow, then a bodily injury resulting in death is caused by an accident.

Continental Cas. Co. v. Jackson, 400 F.2d 285, 288 (8th Cir. 1968). If the insured is injured due to the intentional acts of another person, the injury may still be accidental for insurance purposes if the insured could not reasonably have foreseen the extent of danger. Kascoutas v. Federal Life Ins. Co., 193 Iowa 343, 185 N.W. 125 (1921); Jones v. United States Mutual Accident Ass'n, 92 Iowa 652, 61 N.W. 485 (1894). While the Iowa Supreme Court has not faced a situation in which death resulted from a quarrel instigated by or an assault committed by the decedent, we hold that under the circumstances existing here the decedent's wrongful act does not in itself bar recovery. As the Tenth Circuit has stated:

> The general rule is that when insured assaults another and is killed as a consequence of his attack, his death is accidental unless it was a natural and probable result of his own actions, reasonably foreseeable by him or by a reasonably prudent man in his position.

General American Life Ins. Co. v. Priest, 301 F.2d 390, 394 (10th Cir. 1962) (husband's death accidental where he pointed gun at wife, then she took it and shot him during quarrel). *Accord,* King v. State Farm Life Ins. Co., 448 F.2d 597 (8th Cir. 1971); Peoples Loan & Invest. Co. v. Travelers Ins. Co., 151 F.2d 437 (8th Cir. 1945); *see also* Annot., Accident Insurance: Death or Injury Intentionally Inflicted by Another as Due to Accident or Accidental Means, 49 A.L.R.3d 673, 679 (1973).

■ Notwithstanding the obvious taunt and defiance shown, there is no evidence on the present record to show that Wade would reasonably foresee that his wife would actually shoot him. Given the prior relationship of the parties, there is no evidence from their conduct to suggest that Wade, even though he impulsively dared his wife to do so, would reasonably foresee that result. According to the testimony credited by the district court, Wade neither threatened his wife's life nor pointed the gun at her. Although he did strike her somewhat earlier, he had done so many times before and *she had never offered violent retaliation.* However reprehensible Wade's conduct may have been, there is no evidence to support a finding that the shooting was "according to the usual course of things" or "the natural and usual . . . result" of handing a previously law-abiding and long-suffering wife a gun, even with a defiant challenge to use it. *Cf.* King v. State Farm Life Ins. Co., *supra;* General American Life Ins. Co. v. Priest, *supra.* The general rule is that one has no duty to foresee the criminal conduct of another. As set forth in the Restatement of Torts:

> Normally the actor has much less reason to anticipate intentional misconduct than he has to anticipate negligence. In the ordinary case [one] may reasonably proceed upon the assumption that others will not interfere in a manner intended to cause harm to anyone. This is true particularly where the intentional conduct is a crime, since under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law. Even where there is a recognizable possibility . . . the possibili-

ty may be so slight . . . that a reasonable man in the position of the actor would disregard it.

Restatement (Second) of Torts, § 302B, comment d at 89 (1965). We find that under the circumstances the district court's finding is clearly erroneous and hold that Wade's death was accidental. The evidence leaves this court "with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Judgment reversed and remanded with directions to enter judgment against the insurance company.